# Louisville & Nashville Railroad Company v. Harrod's Administrator.

(Decided October 8, 1913).

## Appeal from Franklin Circuit Court.

1. Railroads—Lookout—When Those in Charge of Train Not Required to Keep.—Those in charge of a railroad train are not required to keep a lookout on an adjacent highway to learn if a team is frightened but are required after they learn that the team is frightened and know the danger of the person in charge of it, to use ordinary care for his safety.

2. Instructions—Singling Out Fact Not Complained of in Petition.—The court should not in his instructions single out a fact not complained of in the petition, or give undue prominence to certain facts which with others go to make out a cause of action.

3. Railroads—Injury to Driver of Team—When Not Barred of Recovery—Ordinary Care.—The driver of a team which he knows to be afraid of a train is not barred of a recovery because he drove the team near the train, if those in charge of the train by ordinary care, after they discovered his peril, could have avoided the injury to him; and in such a case, it is a question for the jury whether his injury was caused by reason of the wildness of the team or by reason of the want of care on the part of those in charge of the train after they discovered his peril.

BENJAMIN D. WARFIELD and McQUOWN & BECKHAM for appellant.

SCOTT & HAMILTON for appellee.

Opinion of the Court by Chief Justice Hobson—Reversing.

One of the roadways of Pleasureville runs parallel to the tracks of the Louisville & Nashville Railroad Company and about twenty yards from the tracks, Reuben Harrod was driving westward on this roadway when his team became frightened and ran off, throwing him out and so injuring him that he died. Harrod was driving two horses to a wagon. There was no bed on the wagon and he was sitting on the coupling. The freight train had been at the station for some time switching cars and was up about the depot which is several hundred feet east of the point of the accident. Harrod came up a cross street and turned down west on the roadway parallel to the railroad track, about the time the freight train started

west to its destination on the main track. The horses became restive; when the engine got about opposite Harrod, the wind blew the smoke from the train down upon the horses and they began to run; the trainmen took no steps to check the train or to stop it and Harrod was thrown out when the horses attempted to turn northward away from the train about one or two hundred feet west of where they started to run, the engine in the meantime having gotten in front of them. This suit was brought by Harrod's personal representative to recover for his death, it being alleged in the petition that the defendant operated its engine and cars in a negligent manner making unnecessary and unusual noises, permitting steam to escape from its engine in an unusual and unnecessary quantity, and thus causing the horses to run away. It was also alleged that the team began to run in plain view of the engineer and fireman and employees on the train; that they observed the frightened condition of the horses; but after they had discovered the frightened condition of the team and the danger of the intestate, they negligently continued to operate the train, moving it up beyond the horses and along and parallel with them, and that the intestate's injuries were the direct result of the negligence of the defendant, its agents and servants. An answer was filed by the defendant denying the allegations of the petition, pleading contributory negligence on the part of Harrod, and alleging affirmatively that the team was wild and afraid of the train; that Harrod knew this, and with this knowledge brought on the danger himself. On a trial of the case before a jury there was a verdict and judgment in favor of the plaintiff for $10,000. The railroad company appeals.

There was no evidence of negligence on the part of those in charge of the train in permitting it to make unusual and unnecessary noises. The circuit court properly declined to submit the case to the jury on this ground; but there was some evidence that the employees of the train after discovering the fright of the horses and after perceiving the danger in which Howard was placed, failed to use ordinary care for his protection. The circuit court, therefore, properly refused to instruct the jury peremptorily to find for the defendant. The allegations of the petition were sufficient to sustain the action on this ground. It was not necessary that the plaintiff should state the evidence in his petition; it was sufficient

for him to allege negligence in general terms; and while the company would not be guilty of negligence in not stopping the train because of the danger of collision with a train following it or in not taking other steps because they did not have the means at their command, these were all matters of evidence. To require all such things to be pleaded would be to make the pleadings unduly prolix. In Reed v. L. & N. R. R. Co., 104 Ky., 607, a passenger fell from a moving train, and the action was brought to recover damages because the trainmen did not stop the train, back it, and take care of him. The rule announced in that case is not applicable to a case like this. We have held in a number of cases that the trainmen are not required to keep a lookout on a highway adjacent to the railroad; but that if they in fact discovered the fright of a team on the adjacent highway, they must after perceiving the danger in which the driver of the team is placed, use such care for his safety as may be reasonably expected of a person of ordinary prudence under the circumstances. (L. & N. R. R. Co. v. Penrod's Admr., 24 R., 50; L. & N. R. R. Co. v. Smith, 107 Ky., 179; L. & N. R. R. Co. v. Street, 139 Ky., 191).

While the case should have gone to the jury, the instructions of the court did not properly present to the jury the law of the case. There was no complaint in the petition as to the smoke of the train. The smoke could not be controlled in the short time that elapsed after this team took flight and before the injury. The wind caused the smoke to blow down upon the team, and this was a matter the trainmen could not control. The court, therefore, erred in submitting to the jury in the first instruction the negligence of the defendant in emitting smoke from the engine. In addition to this the first instruction gives undue prominence to certain facts shown in the case. In lieu of the first instruction the court should have told the jury that if they believe from the evidence that the horses which the plaintiff's intestate was driving became frightened at a train operated on the defendants railroad adjacent to the roadway on which he was driving, and that the conductor of the train or the engineer or fireman discovered that the horses were frightened and knew, or had reason to know, that the plaintiff's intestate was thus placed in peril, and with such knowledge then failed to use ordinary care with the means at hand to prevent injury to him, and by reason of such failure, the plaintiff's intestate received the in-

juries from which he died, the jury should find for the plaintiff.

The evidence showed that the conductor was in the cab of the engine with the engineer and fireman, and there was no evidence that any of the employees on the train except these three, could have done anything to avoid injury to the intestate. The defendant asked the court to instruct the jury in substance that they should find for the defendant unless its servants, after they discovered the intestate's peril, failed to use ordinary care to avoid injury to him. The court refused the instruction and did not clearly present this idea to the jury in any instruction which he gave. On another trial the court will instruct the jury that those operating the train were not required to keep a lookout upon the adjacent highway to see if a team was frightened, and that the jury should find for the defendant unless they believe from the evidence that the conductor of the train or the engineer or the fireman discovered the horses were frightened, and knew or had reason to know that the plaintiff's intestate was placed in peril, and with such knowledge then failed to use ordinary care with the means at hand to prevent injury to him. The court instructed the jury that if the intestate himself was negligent and his negligence contributed to his injury, and but for this he would not have been hurt, they should find for the defendant. The defendant asked the court to instruct the jury in substance that if the intestate had reason to believe that the team would be frightened by the train, if driven near the railroad track, then it was his duty to stop the team until the train passed, and if he drove the team near the track, when he knew, or had reason to believe that the train would pass, and that the team would thereby become frightened, he was guilty of contributory negligence, and the jury should find for the defendant. The court refused to so instruct the jury and of this the defendant complains. The plaintiff's whole case rests upon the idea that after he was in peril, and his peril was perceived by those in charge of the train, ordinary care was not used for his safety. If he was negligent in driving his team near the train when he knew it was liable to become frightened by the train, this did not warrant those in charge of the train in failing to exercise ordinary care for his safety after they perceived the danger in which his negligence had placed him, His negligence in driving an unsafe team near the train

did not authorize the defendant's agents after they perceived the danger in which his negligence had placed him, to proceed with the train regardless of any care for his safety on their part. The familiar rule is that though the plaintiff may have been negligent, still his negligence does not bar a recovery, if, after his peril has been discovered, the defendant with knowledge of his danger, fails to use ordinary care for his protection; and we see no reason why this rule should not apply here. We, therefore, conclude that the court properly refused the instruction asked by the defendant, and that the instruction given on contributory negligence should not have been given. There was evidence tending to show that the team was wild, and had run off a few days before, although there was contrary evidence. There was no evidence that the intestate failed to do anything that he could have done by ordinary care after his team became frightened; but there was evidence warranting the jury in concluding that the real cause of the trouble was not the negligence of the railroad men, but the wildness of the team. In view of all the evidence, the court on another trial, in lieu of the instruction on contributory negligence, will give the jury this instruction:

Those in charge of the train had the right to presume that plaintiff's team was ordinarily gentle, until they knew, or had reason to know the contrary, and if the team was not gentle, but afraid of a train, and the injury of the intestate was by reason of this, and not by reason of a want of ordinary care on the part of those in charge of the train after they knew or had reason to know, of the intestate's danger, as set out in No. 1, the defendant is not liable. A person has reason to know that which a person or ordinary prudence would know under like circumstances.

The instructions we have indicated, with those given by the court defining ordinary care, and the measure of damages, cover the whole law of the case.

The evidence for the defendant is to the effect that those in charge of the train, did not discover the fright of the horses until they were running away, and it was too late for them to avoid injury to the intestate by any steps they might then take, and there is much in the testimony of the plaintiff's witnesses sustaining this view of the case. In view of all the facts we conclude that a new trial should be granted.

Judgment reversed and cause remanded for a new trial.