**CUCCIA v. GULF, M. & N. R. CO.**
No. 16616.

Court of Appeal of Louisiana. Orleans.
April 18, 1938.

Joanna M. Palermo and H. W. Robinson, both of New Orleans, for appellant.

Curtis, Hall & Foster, of New Orleans, for appellee.

McCALEB, Judge.

This is a suit for damages brought by Miss Victoria Cuccia against the Gulf, Mobile & Northern Railroad Company in consequence of the injuries she sustained on July 12, 1935, when an automobile, owned and driven by her brother, in which she was a passenger, ran into one of the boxcars of a freight train, belonging to the defendant, which was obstructing the Chef Menteur highway at Peoples avenue in the city of New Orleans. She charges that the accident occurred through the defendant's negligence, in that it permitted its freight train, consisting of 78 boxcars, to block the public thoroughfare in violation of City Ordinances Nos. 3887 and 4882; in that it failed to maintain lights, signals, or

other mechanical devices at or near the Peoples avenue crossing which would illuminate the same and permit obstructions thereon to be seen from a safe distance; in that it failed to provide gates across the highway and did not station a flagman at the crossing, during its obstruction, to warn motorists of the presence of the train; and in that it failed to caution the driver of the car in which she was a passenger, by sound or whistle, that the train was blocking the intersection.

The defendant answered and admitted the accident but denied any responsibility in the premises. It further set forth alternatively that, if it should be held that it was at fault, then, in such case, the plaintiff was guilty of contributory negligence barring her recovery.

On these issues of fact, a trial was had and resulted in a judgment in defendant's favor. Plaintiff has appealed.

A perusal of the record exhibits that the salient facts of the case are as follows:

The scene of the accident is the Chef Menteur highway at its point of intersection with Peoples avenue. The highway, on which the automobile was proceeding, is a main artery of the system of roads leading to and from the city of New Orleans for traffic traveling east and west. It is a wide concrete thoroughfare, and it intersects, at right angles at Peoples avenue, with the double tracks of the Southern Railway Company. The outbound railroad tracks are situated on the east side of the intersection extending in a northerly direction, and the inbound tracks are parallel to them on the west side of the crossing running south towards New Orleans. The defendant company operates its line over these tracks and shortly before 3:00 a. m. on the morning of the accident, one of its freight trains, with 78 boxcars attached, was traveling on the inbound or south tracks towards New Orleans. Approximately 2,000 feet south of the crossing, the Southern Railway tracks intersect with the tracks of the Louisville & Nashville Railroad. At about 2:58 a. m., the engine of the defendant, having passed over the Chef Menteur highway crossing, was compelled to stop at the L. & N. Railroad tracks in order to permit the passage of a L. & N. train. The stopping of defendant's locomotive had the effect of blocking the Chef Menteur highway intersection as only 24 or 25 of the 78 cars being pulled by it had passed over

the crossing. Thus, for a period, estimated by the witnesses as being between two and five minutes, this intersection was completely obstructed by the box cars of the defendant. While these cars were stationary, as above described, the automobile, in which plaintiff was riding, proceeding on the highway from the east in the direction of New Orleans, crashed into the side of one of these cars, which was blocking the right hand portion of the intersection, with its front end, causing to plaintiff the injuries for which she now seeks recovery.

The plaintiff was one of seven persons riding in the automobile involved in the accident. She, together with several relatives and friends, had embarked earlier in the evening on an outing which was held at a camp located at Lake Catherine, La. There, a party was had in which the participants engaged in swimming, dancing, and drinking beer. The party ended at about 2 o'clock in the morning, and the plaintiff and her relatives were driving back to New Orleans when the unfortunate mishap occurred.

The highway on which the Cuccia car was traveling is very broad and accommodates four lanes of traffic. The intersection at Peoples avenue is 78 feet wide, and vehicles approaching it from the east have a clear and unobstructed view of it in the daytime for a space of over 800 feet. The crossing is illuminated at night by an electric street arc light located not more than 50 feet to the left of it. The railroad has also erected on either side of the intersection large red semaphores elevated upon iron standards which are operated and controlled automatically by electrical contact while the trains are approaching and passing over the crossing or are standing still thereon. The warning lights are discernible from quite a distance and, when in operation, immediately and efficiently serve notice to vehicular traffic that the tracks are occupied and that it is dangerous to proceed. These signals start to operate automatically when a southbound train arrives at a point approximately 1,900 feet from the intersection and they continue to shine until the train has entirely preempted the crossing, and, when functioning, they flicker off and on, thus accentuating the signal of danger.

It is well to pause at this point, in order to note that the plaintiff contends that the warning lights were not working

at the time of the accident. She testified accordingly, and her statement is supported by the other occupants of the automobile. But this evidence is insufficient, in our opinion, to prevail over the convincing proof offered by disinterested witnesses for the defendant who subscribe to the fact that the lights were in operation. Demonstration of the truth of the statements of defendant's witnesses on this score is to be found in a test of the lights made by the defendant at the direction of police officers who arrived on the scene shortly after the occurrence.

 The mere statement of this case clearly establishes that the negligence of the driver of the Cuccia car was the proximate cause of the accident. Therefore, unless the defendant has omitted to perform some duty which it owed to the public and unless such fault has some causal connection with the impact, it is not responsible.

 Plaintiff says that it was incumbent upon the railroad to maintain gates at the crossing and to have a flagman stationed there to warn the oncoming traffic of the presence of the train. We do not think so. See Plummber v. Gulf, M. & N. R. Co., La.App., 153 So. 322. There is no statute which requires such precautions and the railroad is entitled to assume that care will be exercised by travelers on the highway and that a motorist, acting with prudence, will adopt such a rate of speed, in conformity with the condition of the headlights of his car, as will enable him to stop it without mishap. In short, the railroad has the right to expect that motorists will be vigilant and have their cars under control. Jones v. Texas & P. R. Co., La.App., 154 So. 768; Spilman v. Gulf & S. I. R. Co., 173 Miss. 725, 163 So. 445; Southern Ry. Co. v. Lambert, 230 Ala. 162, 160 So. 262; Sisson v. Southern Ry. Co., 62 App.D.C. 356, 68 F.2d 403, and Brown v. Southern R. Co., Pennington v. Southern Ry. Co., 5 Cir., 61 F.2d 399. Aside from this, however, the crossing in the instant case was well lighted, the plaintiff and the driver of the automobile were familiar with the hazard (having traversed it previously on many occasions), and it was equipped with danger signals which were sufficient to place any one but an extremely listless motorist on his guard.

 Counsel for the plaintiff, nevertheless, assert that the defendant was guilty of negligence in that it violated Ordinance No. 4288 of the City of New Orleans, which prohibits a railroad company, operating within the corporate limits of the parish of Orleans, from permitting its engines or cars to remain standing upon any street or crossing or to obstruct crossings in any manner whatsoever except insofar as may be done by trains in motion. Counsel for defendant contend, however, that this ordinance has been impliedly repealed by the traffic ordinance of the city (No. 13,702 C.C.S.), which provides, in substance, that a railroad train is prohibited from blocking any street for a period of time longer than five minutes.

We are inclined to agree with the argument of defendant's counsel that the present traffic ordinance has supplanted the regulation cited by plaintiff and we are, furthermore, convinced from the evidence that defendant's train did not block the intersection for over five minutes. But, albeit, if we are wrong in this finding, the ultimate conclusion of the case would not be altered, for the negligence of the defendant, in order to be actionable, must be a contributing cause of the accident, and we cannot conceive that it was under the circumstances presented. It is also manifest that these prohibitory ordinances were enacted solely with a view of preventing the undue congestion of traffic and that the city did not intend to impose upon the railroads a greater degree of care than that required by existing law.

Being of the belief that the district judge was entirely correct in his holding, the judgment appealed from is affirmed.

Affirmed.