## Chesapeake & O. Ry. Co. v. Switzer.

(Decided Dec. 13, 1938.)

LeWRIGHT BROWNING and KIRK & WELLS for appellants.

C. F. PACE for appellee.

Opinion of the Court by Judge Rees—Reversing.

The appellee, Allene Switzer, obtained a judgment for $1,200 against the Chesapeake and Ohio Railway Company for personal injuries sustained by her as the result of a collision between an automobile in which she was riding and one of appellant's freight engines which, at the time of the collision, was standing on a highway crossing just outside the corporate limits of the city of Paintsville.

There were two trials of the case. On the first trial the jury returned a verdict for the defendant, and the plaintiff's motion for a new trial was sustained and the verdict was set aside. The defendant, in due time, prepared and tendered a bill of exceptions of the proceedings on the first trial, and that bill has been made a part of the record on this appeal in order to present the propriety of the court's ruling on the motion for a new trial. At the conclusion of the second trial the defendant moved to substitute the former verdict in lieu of the verdict returned by the jury on the second trial, and the motion was overruled. Appellant insists that the court erred on the second trial of the case in overruling its motion for a directed verdict in its favor, and also on the first trial in sustaining plaintiff's motion and grounds for a new trial.

On the night of July 26, 1934, the appellee, in company with Everett Johnson and Myra Roberts, drove from Paintsville to Pikeville in an automobile driven by Johnson. They stopped at Prestonsburg, and Johnson bought a pint of gin. Appellee and her two companions each took a drink, and before they reached Pikeville

Johnson took another drink. They remained in Pikeville about thirty minutes. Johnson admitted that while there he took a third drink out of the bottle. On the return trip to Paintsville the car in which they were riding collided with a large mallet type freight engine standing across the highway, and the three occupants of the car were painfully and seriously injured. The car was practically demolished. The engine was on a spur track connecting the main line tracks with a "Y" track used for turning engines. The two legs to the "Y" track meet near the highway, and the single track then extends across the highway to the main tracks. In turning an engine, it is backed or moved out on one leg of the "Y" and then moved forward on the other leg. During this operation it is necessary for the engine to remain standing on the crossing while the switch is being thrown. On the occasion in question, the engine had been standing on the crossing between a minute and a minute and a half before the collision occurred. The engine was 16 feet in height, and the engine and tender were nearly 100 feet long. The headlight on the front of the engine was burning as was the light on the rear of the tender. There were lights in and on the cab, and ventilation holes in the firebox through which light would shine on each side of the engine. According to the proof, some of these lights could have been seen for a distance of several hundred feet by one traveling on the highway from the direction of Pikeville. The highway at this point is straight for a distance of 1,000 or 1,200 feet, and the view of travelers thereon is unobstructed. The appellee testified that she did not see the engine until the automobile was within 12 or 15 feet of it, and Johnson testified that he was within 20 or 30 feet of the engine when he first saw it and was unable to avoid the collision. He swerved the car to the left and struck the tender. He claimed that he was driving at a speed of about 25 miles an hour, and, as he was approaching the crossing, ran into a patch of fog and was unable to see the engine until he passed through the fog. Members of the engine crew, two of whom were introduced as witnesses by the plaintiff, and others who were near the scene of the accident and saw the approaching automobile testified that it was traveling at a speed of 50 or 60 miles an hour. Both the appellee and Johnson, the driver of the car, were familiar with the highway and the location of the crossing. It is appellee's contention that it was the duty of those in charge of the

engine to give some warning to travelers on the highway that the crossing was occupied by the engine, and, further, that the engineer failed to give sufficient, or any, warning to the occupants of the car after their peril was discovered. It is not claimed, and the proof fails to show, that the crossing in question was dangerous because of its surroundings. Johnson, the driver of the car, according to his own testimony, was guilty of negligence, which was the proximate cause of the accident, either in failing to drive at a speed at which he could stop within the distance covered by his lights or in failing to see the engine in time to avoid the collision.

In recent years, numerous cases have been presented to the courts of other jurisdictions involving the right of a plaintiff who has collided with a train occupying a grade crossing to recover from a railroad company. The great weight of authority is to the effect that a person who drives, or is driven into, the side of a train standing or moving over a grade crossing cannot, in the absence of special circumstances rendering the crossing peculiarly hazardous, recover from the railroad company. The question was first presented to this court in the case of Louisville & Nashville Railroad Company v. Mischel's Adm'x, 272 Ky. 295, 114 S. W. (2d) 115. The facts in that case and the instant case are very similar, although it was claimed in the Mischel Case that the highway was unusually dangerous because of its surroundings in that there was a curve in the highway and trees, shrubbery, and signboards obstructed the view of a traveler on the highway as he approached the crossing. After reviewing a number of cases from other jurisdictions, we said [page 120]:

"After a careful review of the cases cited, which we think clearly lay down the law as applicable in such a situation as is here presented, we are compelled to hold that there is a lack of showing of any negligence on the part of appellant such as would constitute the proximate cause of the injury. Having reached such conclusion, it becomes unnecessary to discuss whether or not the guest was negligent. A recovery could only be had of appellant on a showing of actionable negligence on its part; none having been shown, the court should have directed a verdict for appellant."

A number of cases are cited in the Mischel opinion.

Other recent cases from foreign jurisdictions supporting the rule announced in the Mischel Case are: Sisson v. Southern Railway Company, 62 App. D. C. 356; 68 F. (2d) 403; William A. Smith Construction Company v. Brumley, 10 Cir., 88 F. (2d) 803; Northern Pacific Railway Company v. Bacon, 9 Cir., 91 F. (2d) 173; Mabray v. Union Pacific Railway Company, D. C., 5 F. Supp. 397; Johnston v. Southern Railway Company, Ala. Sup., 181 So. 253; Southern Railway Company v. Lambert, 230 Ala. 162, 160 So. 262; Chicago R. I. & P. Railway Company v. Sullivan, 193 Ark. 491, 101 S. W. (2d) 175; New York Central Railway Company v. Casey, Ind., Sup., 14 N. E. (2d) 714; Dolan v. Bremner, 220 Iowa 1143, 263 N. W. 798; Sheets v. Baldwin, 146 Kan. 596, 73 P. (2d) 37; Witherly v. Bangor & A. R. Co., 131 Me. 4, 158 A. 362; McParlan v. Grand Trunk Western Railway Company, 273 Mich. 527, 263 N. W. 734; Simpson v. Pere Marquette Railroad Company, 276 Mich, 653, 268 N. W. 769; Ausen v. Minneapolis, St. Paul & S. S. M. Railway Company, 193 Minn. 316, 258 N. W. 511; State ex rel. Kansas City Southern Ry. Co. v. Shain, 340 Mo. 1195, 105 S. W. (2d) 915; Cuccia v. Gulf, M. & N. Railroad Company, La. App., 180 So. 513; Gulf, M. & N. Railroad Company v. Kennard, 164 Miss. 380, 145 So. 110; Blackwell v. Hawkins, 207 N. C. 874, 178 S. E. 554; Reed v. Erie R. Company, 134 Ohio St. 31, 15 N. E. (2d) 637; Everetts v. Pennsylvania Railroad Company, 330 Pa. 321, 198 A. 796; Cisco & Northeastern Railway Company v. McCharen, Tex. Civ. App., 118 S. W. (2d) 844; Reines v. Chicago, M., St. P. & P. R. Co., Wash., 80 P. (2d) 406; Hendley v. Chicago & N. W. Railway Company, 198 Wis. 569, 225 N. W. 205; Yardley v. Rutland Railroad Company, 103 Vt. 182, 153 A. 195; Bowers v. Great Northern Railway Company, 65 N. D. 384, 259 N. W. 99, 99 A. L. R. 1443, and annotations beginning at page 1454.

Ordinarily, the presence of a train on a grade crossing is a sufficient warning of danger to a traveler on the highway. In Jones v. Atchison, T. & S. F. Railway Company, 129 Kan. 314, 282 P. 593, the court said [page 594]:

"Under ordinary circumstances, a freight train standing across a highway on a dark and foggy night will sufficiently reveal itself to travelers exercising due care in the operation of auto vehicles which are equipped with proper lights and which

are driven at a proper rate of speed under the conditions. A railway company is not required to anticipate the erratic conduct of others. At the time the accident occurred, the law regulating use of the highway required that plaintiff's truck be equipped with good and sufficient brakes, and with two lamps exhibiting white lights visible at a distance of 300 feet in the direction in which plaintiff was proceeding; and required plaintiff to drive at a rate of speed reasonable and proper under the conditions. The railway company's duty extended no further than to exercise reasonable care, and it was not required to foresee that on one night of a period of history the driver of a lawfully equipped and operated truck might be so completely engulfed in Cimmerian darkness, impenetrable fog, and dense train engine smoke, that he could not apprehend a train was there, and take the extraordinary precautions necessary to protect him from projecting his truck against the side of the train.''

In Trask v. Boston & Maine Railroad, 219 Mass. 410, 106 N. E. 1022, the plaintiff, in the nighttime, drove an automobile into the side of a train standing on a crossing. In holding that the railroad company was not liable, the court said [page 1024]:

"The defendant and its servants, in the exercise of reasonable care, were justified in believing that travelers in automobiles properly lighted and driving at reasonable speed would observe the cars upon the crossing in time to avoid coming in collision with them.''

Appellee insists, however, that even if it be conceded that the driver of the automobile was guilty of contributory negligence, yet the engineer in charge of the defendant's engine discovered plaintiff's peril in time to have prevented the collision by the giving of proper signals. M. M. Picklesimer, who was in charge of the engine at the time of the accident, was introduced as a witness by the plaintiff. He testified that he was sitting in the cab of the engine waiting for the switch to be thrown before moving the engine forward and off the crossing. He saw the lights of an automobile approaching the crossing from the direction of Prestonsburg when the automobile was about 250 feet from the engine. He was asked these questions and made these answers:

"Q. Now what did you do when you saw the car approaching? A. When that car approached— when I saw it at first, I expected him to see the engine and slow up, but the car didn't slow up and when it got down near enough to hit the engine—

"Q. What did you do? A. I raised up off my seat, reached over clear out of the cab and halloed and waved my hand at him to stop.

"Q. How close was he when you did that? A. Well, it was forty or fifty feet."

Appellee invokes the doctrine of "last clear chance," and insists that the engineer, when he discovered plaintiff's peril, should have blown the whistle as a warning instead of leaning out of the engine cab and attempting to attract the attention of the driver of the car with his hands and voice. It is a well-recognized rule in this jurisdiction that the negligence of a plaintiff will not bar him of recovery if it is shown that, after his peril has been discovered, the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the plaintiff's negligence. Louisville & Nashville Railroad Company v. Harrod's Adm'r, 155 Ky. 155, 159 S. W. 685, 47 L. R. A., N. S., 918. This rule does not require the defendant, when confronted with an emergency brought about by the acts of the plaintiff, to take unerringly the safest course to prevent injury to the plaintiff after the latter's peril has been discovered. In the instant case, the engineer was required to act suddenly, without opportunity for deliberation, in an emergency brought about by the driver of the automobile. The engineer had the right to assume that the driver would see the engine and stop before he reached the crossing. When the engineer discovered that a collision was imminent, the automobile was within 40 or 50 feet of the crossing. If it was traveling at a speed of 25 miles an hour, as claimed by Johnson, it would have traveled the intervening distance in about one second, but if traveling at the speed estimated by the other witnesses it would have traveled 40 feet in less than one-half of a second. The engineer was compelled to act hurriedly, and the standard of care required of him was that of a person of ordinary prudence when confronted with a like situation. Louisville & Nashville Railroad Company v. Mann's Adm'r, 227 Ky. 399, 13 S. W. (2d) 257. In Kentucky Traction & Termi-

nal Company v. Roschi's Adm'r, 186 Ky. 371, 216 S. W. 579, 582, this court said:

"As regrettable as is the death of this man, to avoid the consequences of his negligence, the defendant, through its motorman in charge of the car, was only required to exercise such reasonable care as persons of ordinary prudence and presence of mind would have exercised under like circumstances, and to hold that this evidence shows any negligence upon the part of the motorman would be necessarily upon the hypothesis that the company was liable if he failed in any degree to exercise the utmost care possible by immediately comprehending the whole situation and losing not a second in the performance of every duty imposed upon him by a sudden emergency. Such presence of mind and efficiency is not possessed by ordinary men, nor available to the defendant, and hence plaintiff was not entitled to protection in that extreme degree, and the trial court erred in refusing to direct a verdict for the defendant."

Under the facts, it is obvious that even if the engineer had blown the whistle after he had discovered the plaintiff's peril, the collision would not have been prevented. The plaintiff failed to establish negligence on the part of the railroad company, and the court therefore should have instructed the jury to find for the defendant.

The evidence on the two trials was substantially the same, and it follows that the court erred on the first trial in overruling defendant's motion for a peremptory instruction. Having submitted the case to the jury and the jury having returned a verdict for the defendant, that verdict should not have been disturbed.

The judgment is reversed, with directions to reinstate the first verdict, and to enter judgment thereon.