## Sympson v. Southern Ry. Co. in Kentucky.

June 13, 1939.

Chas. C. Marshall, Judge.

Victor L. Kelley, Stanley Trent and William E. Dowling for appellant.

Edward P. Humphrey, Marvin H. Taylor and John K. Todd (Humphrey & Taylor and Todd & Beard of counsel) for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The factual situation under which this collision accident occurred, as disclosed by the uncontradicted evidence, is that as appellant was proceeding through Lawrenceburg, towards his home at Bardstown, over Woodford Street at the early morning hour of about 3:30, when it was still dark, there was standing across the Woodford grade crossing a freight car of the defendant, into the side of which he drove his motorcycle with such force as to practically destroy it and seriously injure him.

As to this, it appears that appellee's servants, in charge of its freight train, had left standing this freight car on the crossing, temporarily blocking the Woodford Street passway thereover, while they were engaged elsewhere in switching operations of the train.

It is further disclosed by the record and undenied that appellant was at the time of driving his motorcycle into collision with the freight car, standing upon this Woodford Street crossing, entirely familiar with and well knew the location of the crossing, due to his having repeatedly used and crossed it while passing through Lawrenceburg in going to and fro between his home in

Bardstown and the University at Lexington, where for a period of four years he had recently been a student.

Not only was appellant thus advised of the location of the crossing, but also as to the nature or physical condition of East Woodford Street in respect to a slight curvature in its course towards the crossing, as well as there being a difference of a couple of feet in the matter of its elevation at a distance of about 190 feet east of the crossing and the level of the street at the crossing, which it is contended were effective to obscure the traveler's view of the crossing ahead, when approaching it over this street from the east. Also he knew the character of light maintained at the crossing by appellee, as well as its manner and custom of operating its crossing gates, maintained there, only between the hours of 7 A. M. and 7 P. M. by way of warning notice to travelers along this highway, approaching the crossing.

As to these matters, it is undisputed that appellee maintained at the crossing an electric light of 400 candle power (256 wattage) suspended from the top of a telephone pole, some 42 feet above the crossing, and beneath which light there were the customary cross-arms, upon which were strung numerous telephone wires running parallel with the track. Also at the crossing there was the customary railroad crossing sign and a short distance east of it there was an additional "go slow" road sign.

It is appellant's contention that this railroad crossing was an especially dangerous one, due to its alleged defective illumination and the obstructed view given the traveler approaching it by reason of the above stated physical conditions as to East Woodford Street, and he contends further that the defective character of appellee's illumination of the crossing was such as created an optical illusion, which, together with its habit and custom of leaving standing upright its safety gates at night, tended both to deceive and invite the traveller approaching the crossing to proceed over it, even when unwarned of its being blocked by the car standing thereon or its train approaching it.

There is no issue here either as to the fact or extent of appellant's injuries sustained in this collision accident, but there is presented the issue as to whether or not the accident and appellant's injuries, resulting therefrom, were caused by the negligence of the appellee

and its agents in charge of its freight train, when using this crossing upon this occasion, through having failed to exercise a proper degree of care to warn the appellant of the fact that the crossing was then being used by it and passage thereover was blocked.

There is here no question presented as to there having been any duty imposed under the humane "last clear chance" rule upon the appellee's agents to warn appellant, after discovering his heedless approach to the crossing, as there is not a scintilla of evidence that the fact of his approaching the crossing, when seemingly ignorant of its blocked condition, was ever discovered by any one of the train crew, as it appears they were then on the other side of the freight train, engaged in switching the cars. In fact, appellant's collision with the freight car was not even learned of by them until after they had proceeded on to Danville.

The appellant, when interrogated as to when or at what distance he saw the car was standing on the crossing as he drove towards it, answered he was unable to remember just what happened or what he saw as he approached the crossing. Other of his witnesses, who live directly by this crossing, state that they were awake at the time appellant was approaching the crossing and that they heard him clamp on his brakes just before they heard his motorcycle crash into the side of the car. One of his witnesses further states that he thereupon ran out to the crossing to see what had occurred, when he found appellant's motorcycle had gone under the car, while he was stretched out unconscious and bleeding by it.

Further the testimony is that a black skidding track was found upon the road, beginning at a point twenty-seven feet from the crossing, indicating that appellant was within such distance of the crossing before detecting that the passway thereover was blocked by the freight car standing on it and that he then, too late, applied his brakes in attempting to avoid running into and colliding with the car.

At the conclusion of all the testimony, defendant moved the court to direct the jury to return a verdict in its favor, which motion the court sustained and so directed the jury, when it accordingly returned a verdict for the defendant, on which judgment was entered.

Appellant's motion and grounds for a new trial having been overruled, he has appealed, challenging the

propriety of the court's ruling in having sustained appellee's motion for a directed verdict.

It appears by the briefs of both parties that the court, in sustaining appellee's motion for a directed verdict, did so in reliance upon the like ruling made in the late case of Louisville & Nashville Railroad Company v. Mischel's Adm'x, 272 Ky. 295, 114 S. W. (2d) 115, 120.

Upon reference to the above case, we find that its facts and the facts of the instant case are very similar and the rule of law, arising out of the facts of the case there declared, we conclude is likewise here applicable and controlling.

In that case it was claimed, as here, that the highway was unusually dangerous because of its surroundings, as a curve in the highway, trees, etc., obstructed the view of travelers along the highway as they approached the crossing. There, after reviewing a number of cases from other jurisdictions, we said:

"After a careful review of the cases cited, which we think clearly lay down the law as applicable in such a situation as is here presented, we are compelled to hold that there is a lack of showing of any negligence on the part of appellant such as would constitute the proximate cause of the injury.  *  *  *
A recovery could only be had of appellant on a showing of actionable negligence on its part; none having been shown, the court should have directed a verdict for appellant."

Again, in the case of Chesapeake & Ohio Railway Company v. Switzer, 275 Ky. 834, 122 S. W. (2d) 967, 968, the like question was presented and likewise decided on the authority of the Mischel case, supra. In the Switzer case Allene Switzer obtained a judgment against the railway company for personal injuries, sustained by her as the result of a collision of the automobile in which she was riding with one of the company's freight engines, which, at the time of the collision, was standing on a highway crossing just outside the corporate limits of the City of Paintsville. In disposing of appellee's contention that the company's negligence, in that those in charge of the engine had failed to give some warning to travellers on the highway that the crossing was occupied by the engine, was the proximate cause of the acci-

dent and that the company was liable for damages therefor, the court said:

"In recent years, numerous cases have been presented to the courts of other jurisdictions involving the right of a plaintiff who has collided with a train occupying a grade crossing to recover from a railroad company. The great weight of authority is to the effect that a person who drives, or is driven into, the side of a train standing or moving over a grade crossing cannot, in the absence of special circumstances rendering the crossing peculiarly hazardous, recover from the railroad company. The question was first presented to this court in the case of Louisville & Nashville Railroad Company v. Mischel's Adm'x, 272 Ky. 295, 114 S. W. (2d) 115.

\* \* \*

"Ordinarily, the presence of a train on a grade crossing is a sufficient warning of danger to a traveler on the highway. In Jones v. Atchison, T. & S. F. Railway Company, 129 Kan. 314, 282 P. 593, the court said [page 594]:

" 'Under ordinary circumstances, a freight train standing across a highway on a dark and foggy night will sufficiently reveal itself to travelers exercising due care in the operation of auto vehicles which are equipped with proper lights and which are driven at a proper rate of speed under the conditions. A railway company is not required to anticipate the erratic conduct of others. \* \* \*' "

Further in the Switzer case there was cited Trask v. Boston & Maine Railroad, 219 Mass. 410, 106 N. E. 1022, wherein the court, in holding that the railroad company was not liable, said:

"The defendant and its servants, in the exercise of reasonable care, were justified in believing that travelers in automobiles properly lighted and driving at reasonable speed would observe the cars upon the crossing in time to avoid coming in collision with them."

In Burkhead v. Pennsylvania Railroad Company, 275 Ky. 841, 122 S. W. (2d) 970, 971, where the facts are very similar to those presented in the instant case, the court reiterated and applied the rule announced in the Mischel and Switzer cases, supra, the court saying:

"At the conclusion of plaintiff's evidence, the court peremptorily instructed the jury to find for the defendant. It is appellant's contention that it was the duty of the railroad company, under the circumstances, to warn travelers on the street of the presence of the freight car on the crossing. In Chesapeake & Ohio Railway Company v. Switzer, supra, we held that ordinarily the presence of a train on a grade crossing is sufficient warning of danger to a traveler on the highway. * * *

"The purpose of signals at a railroad crossing is to warn travelers on the highway of the danger of an approaching train. * * * Likewise, crossing signs are intended only to give notice of the presence of a railroad crossing, and to protect the traveler against approaching trains. Appellant admitted that he knew of the presence of the crossing.

"If appellant failed to see a freight car 12 feet high extending entirely across the street directly in front of him, it is hardly reasonable to believe that he would have seen a small sign on the side of the street. In Crosby v. Great Northern Railway Company, 187 Minn. 263, 245 N. W. 31, the court, speaking of signals at railroad crossings required by statute, said [page 32]:

" 'The requirement for signals and warnings as to such crossings is not for the purpose of preventing automobile drivers from running into the side of trains. * * *

" 'Common experience is that the occupation of a highway crossing by a train is visible to travelers on the highway including automobile drivers whose cars are properly equipped with lights and who exercise ordinary care. It would seem that a train upon a crossing is itself effective and adequate warning. It has always been so considered. This is so whether the train is moving or standing.' "

See, also, the yet later consolidated cases of Scarbrough v. Louisville & Nashville Railroad Company and Hunton v. Louisville & N. R. Co., 276 Ky. 292, 124 S. W. (2d) 88, presenting like facts and reaffirming this rule.

In view of the legal principles and rules declared

in these late cases, which are in harmony with the principles and rules declared by a great majority of foreign jurisdictions, we conclude that the appellant here failed to prove negligence on the part of the defendant as constituting the proximate cause of the accident from which his injuries resulted. Therefore, on the authority of these cited cases, we are of the opinion that the learned trial court properly sustained defendant's motion, made at the conclusion of the evidence, that it peremptorily instruct the jury to find in its favor.

Such being our view, it follows that the judgment should be and it is affirmed.