LOUISVILLE & NASHVILLE RAILROAD COMPANY
v. REVLETT

[No. 28,177. Filed May 14, 1946. Rehearing Denied
June 5, 1946.]

*Darby & Fitzgerald,* of Evansville, *William Espin-schied,* of Mount Vernon, and *J. P. Hamilton,* of Louisville, Kentucky, for appellant.

*John H. Jennings,* of Evansville, for appellee.

STARR, J.—This suit was brought by the appellee against the appellant for personal injuries sustained by

him in a collision between an automobile in which he was riding which was driven by his son into the side of a box car which was the nineteenth car of a slowly moving freight train owned and operated by the appellant. The accident occurred at the intersection of U.S. Highway 60 and the appellant's right of way in the town of Cloverport, Kentucky. From a verdict and judgment in favor of the appellee, appellant prosecuted this appeal.

All the evidence as to the nature of the relationship that existed between appellee and the driver of the automobile at the time of the accident was that contained in the testimony given by the appellee in his own behalf which was substantially as follows: The appellee testified that at the time in question he lived at Rumsey, Kentucky, and that he, his son Harold, age 24, and one Crow Jarvis were making a trip from appellee's home to Lexington, Kentucky; that they were all riding in the single seat of the automobile; that his said son was driving and that appellee was sitting on the righthand side and that Mr. Jarvis was sitting between appellee and his son; that the automobile belonged to appellee's other son, Charles; that Harold was unmarried, and was attending the University of Kentucky which is located at Lexington, and was returning there to school; that the appellee was also going to Lexington where, by the invitation of Harold, he intended to visit him and some boys he knew. Jarvis was going to Frankfort to attend to some business of his own; that Jarvis was authorized to accompany appellee and his son by the appellee; that Harold would come home every two or three months while in school at Lexington. On his cross-examination appellee testified that he was making this trip as a guest of his said son Harold, and was going to Lexington to visit him and that Harold had no interest in the automobile; that his son, Charles, had left the automobile with him while

away from home; that while the automobile was at his home, anyone using the same bought the gasoline; that no arrangements were made about the return of the automobile from Lexington after the trip had been completed, except that Harold was to stay in Lexington and the appellee and Jarvis intended to come back together if Jarvis stayed as long as the appellee did, and that Jarvis was to help the appellee drive the automobile on the return trip to appellee's home at Rumsey, Kentucky.

From the undisputed evidence it appears that this crossing accident happened about four o'clock in the morning of October 21, 1940; that the highway, at said intersection, extends in a northerly and southerly direction and that the same is improved by a pavement approximately 18 feet in width; also, at and near said intersection with sidewalks on each side of the pavement of undetermined width, that appellant's railroad tracks, at said crossing, intersect the highway approximately at right angles; that the highway comes into the town south of said railroad right of way from a westwardly direction and curves northeastwardly as it approaches said crossing; that from the point where said curve ends, the highway runs north to the place where it intersects with appellant's tracks at the crossing; that immediately south of the intersection on each side of the highway there are houses and a certain number of trees between said houses and the highway, which are standing in the yards where the houses are located; that there was nothing under ordinary conditions to obstruct the vision of a driver driving north towards the intersection after he had rounded the above described curve and from said point he would be able to see across the crossing and have a clear view of everything in front of him; that, at the time, the crossing was enveloped in a very heavy fog and the night was dark; that the appellee was,

and for several years prior to the accident had been, familiar with said crossing and aware of the signal devices that were located thereat; that the driver, Harold Revlett, at the time of the accident, was not familiar with or acquainted with the crossing or the signaling devices there located; that said crossing is located in the resident portion of the town; that at the time of the accident a statute of the State of Kentucky made it *prima facie* evidence of unreasonable and improper driving for a vehicle to be driven along a highway passing through the residence portion of any city or town at a rate of speed exceeding 25 miles per hour; that at the time of the accident there was a metal reflector railroad crossing sign located on the right side of the paved highway at a point some distance south of the crossing; and there was a railroad crossing sign painted in white across the east half of the paved highway at a point more than 100 feet south of the crossing; that immediately to the south of the said crossing and to the west of the paved portion of the highway there was, and for a long time prior thereto had been, installed and maintained by the appellant an automatic, electrically controlled gong and wig-wag red flashing light or signal; that at the time of the accident said gong was sounding and said wig-wag signal was working; that said automobile was a Ford coupe and was in good working condition including the headlights thereon; that at the time of the accident the laws of Kentucky required all automobiles to have at least two lighted lamps in front showing white or tinted lights other than red lights, and of sufficient power to clearly reveal substantial objects at least 350 feet ahead; that aside from telling the driver as they entered Cloverport that they were so entering, appellee said nothing to the driver before the accident.

In addition to the undisputed evidence the appellee in

his case in chief produced evidence to show that this was a particularly hazardous and dangerous crossing due to the topography and geography thereof, in that the above mentioned curve was an abrupt curve and that the same ended very close to the intersection, to-wit: at an estimated distance of not more than 75 feet; also, that the said intersection, as one approached it from the south, was obstructed by the limbs of trees which grew out over the sidewalk and into the street. As to the evidence concerning the obstruction to the said crossing by the trees, we are of the opinion that only one reasonable inference can be drawn therefrom, namely, that the highway as it approached appellant's track was not obstructed; that at the time of his injury, a fog so enveloped the crossing that the train passing over it could not be seen; that he heard no sound from the gong; that there was no light in the signal and the same had been out for several days; that if there had been a red light in the flashing signals, the same could have been seen by him through the fog; that as the automobile was rounding the curve, the driver was slowing down.

Appellant's evidence in its behalf was to the effect that said curve was an eight degree curve, which was undisputed by the appellee, and that said curve ended 222 feet south of its right of way; that the headlights from an automobile as it approached from the south would reveal the crossing 300 feet away; that at the time of the accident said metal reflector railroad crossing sign was located on the right side of the paved highway at a point 387 feet south of the crossing from which you could see the crossing; that there was a railroad crossing sign painted in white across the paved highway at a point more than 100 feet south of the crossing; that appellant's train at the time of the accident, was traveling at not more than four or five miles per hour in a heavy fog

and had given the usual warning as it approached the crossing.

Appellant has assigned as error the overruling of its motion for judgment on the jury's answers to special interrogatories notwithstanding the verdict. It insists that the answers to Interrogatories 13, 15, 16, 25, 26, 28, 30 and 31 show contributory negligence as a matter of law on the part of the appellee, with this we cannot agree. The facts found in the answers to the above interrogatories other than No. 13, are as follows: The appellee was familiar with the crossing in controversy while his son, who was driving the automobile at the time of the accident, was not. When the automobile reached the western limits of Cloverport, the appellee told the driver that they were coming into the said town but after he observed the fog he did not warn or caution the driver against the speed of the automobile as it traveled through the fog toward the crossing, or did he say anything further to the driver after informing him that they were coming into Cloverport. As they approached the crossing the gong in the wig-wag signal was ringing, the wig-wag banner was swinging back and forth and that if the automobile had been traveling at a rate of eight or ten miles per hour the driver could have heard the gong in time to avoid the collision; and finally, at no time as they approached the crossing was the speed of the automobile materially decreased. The interrogatories considered as a whole entirely fail to show that the appellee was guilty of negligence which *contributed* to his injury. In the absence of such a showing appellant's contention must fail. *Oliver v. Coffman* (1942), 112 Ind. App. 507, 45 N. E. (2d) 351; *Drewrys Limited U. S. A., Inc.* v. *Crippen* (1942), 113 Ind. App. 120, 44 N. E. (2d) 1006.

To support its contention that the negligence claimed to be shown by these interrogatories and answers was imputable to the appellee, the appellant relies upon Interrogatory No. 13 and the jury's answer thereto, which are in words as follows:

"Did the plaintiff, Walter Revlett, have the right to control the movement and operation of the Ford car at the time of the journey which ended in the crossing accident at Cloverport?

"Answer: Yes."

This interrogatory called for a conclusion of law and was therefore improper and it must be disregarded. *National Biscuit Co.* v. *Wilson* (1913), 52 Ind. App. 630, 99 N. E. 819. Watson's Revision of Works Practice and Forms, Vol. 2, § 1896, p. 468. When the same is disregarded nothing remains which would impute the driver's negligence, if any there was, to the appellee.

Appellant insists that the court erred in overruling its motion for a new trial.

As this accident happened in the State of Kentucky, we must be guided by the substantive law of that state at the date of the accident in arriving at our conclusions. *Baltimore, etc., R. Co.* v. *Reed* (1902), 158 Ind. 25, 62 N. E. 488.

In its motion for a new trial appellant, among other causes therefor, sets out that the verdict is not sustained by sufficient evidence and is contrary to law. As each of these grounds in this case only goes to the sufficiency of the evidence we will consider them together.

It is appellant's position that both the appellee and the driver of the automobile were guilty of contributory negligence as a matter of law, and that even though the appellee was not guilty of such negligence, the negligence of the driver was imputed to him.

Under the law of Kentucky a person who drives into the side of a train standing or moving over a grade crossing cannot, in the absence of special circumstances rendering the crossing peculiarly hazardous, recover from the railroad company. *Chesapeake & O. Ry. Co.* v. *Switzer* (1938), 275 Ky. 834, 122 S. W. (2d) 967.

In the last mentioned case the court quoted with approval the following language from *Jones* v. *Atchison, T. & S. F. Railway* (1929), 129 Kan. 314, 282 P. 593:

"Under ordinary circumstances, a freight train standing across a highway on a dark and foggy night will sufficiently reveal itself to travelers, exercising due care in the operation of auto vehicles which are equipped with proper lights and which are driven at a proper rate of speed under the conditions. A railway company is not required to anticipate the erratic conduct of others. At the time the accident occurred, the law regulating use of the highway required that plaintiff's truck be equipped with good and sufficient brakes, and with two lamps exhibiting white lights visible at a distance of 300 feet in the direction in which plaintiff was proceeding; and required plaintiff to drive at a rate of speed reasonable and proper under the conditions. The railway company's duty extended no further than to exercise reasonable care, and it was not required to foresee that on one night of a period of history the driver of a lawfully equipped and operated truck might be so completely engulfed in Cimmerian darkness, impenetrable fog, and dense train engine smoke, that he could not apprehend a train was there, and take the extraordinary precautions necessary to protect him from projecting his truck against the side of the train."

It will be noted that the case of *Chesapeake & O. Ry. Co.* v. *Switzer, supra,* excepts from the rule therein laid down crossings where special circumstances renders the same peculiarly hazardous. This exception, no doubt,

was following the opinion in the case of *Louisville & N. R. Co.* v. *Mischel's Adm'x.* (1938), 272 Ky. 295, 114 S. W. (2d) 115, wherein the rule is laid down that "One crossing can hardly be said to be more dangerous than another unless the geographical or topographical situation makes it so." In this last mentioned opinion the court explains and discusses the cases of *Coil's Admrx.* v. *Chicago, St. L. & N. O. R. Co.* (1929), 232 Ky. 33, 22 S. W. (2d) 428 and *Louisville & N. R. Co.* v. *Chas. S. and F. Mahoney* (1927), 220 Ky. 30, 294 S. W. 777. In the first of these cases the traveler, in approaching the track upon which the train was running, drove through a cut which concealed the railroad and then came over a hill close to the railroad crossing. In the latter case, it was dark and raining and there was a sharp curve in the highway very near to the crossing, so it was well-nigh impossible for one approaching the same to see a train until almost reaching the track. The court held under these circumstances, a driver who is well-acquainted with the crossing and its surroundings and of the gong and wig-wag there situated, was entitled to a warning signal where the crossing is obstructed by a train, the same as is required to be given by the trainmen of an approaching train.

In the case before us no such situation is presented and the general rule stated in the case of *Chesapeake & O. Ry. Co.* v. *Switzer, supra,* applies here. This rule is also stated in the case of *Louisville & N. R. Co.* v. *Mischel's Adm'x, supra,* wherein the facts are quite similar to the present case. Here we have a long sweeping curve of only eight degrees and an unobstructed straight approach to the same for not less than 222 feet.

It must be remembered that the jury by its answers to the interrogatories, found that the driver of the car

was not familiar with the crossing in question. Under these circumstances the appellant was under no duty so far as the driver was concerned, this not being a hazardous or dangerous crossing, to give any warning that the track was being occupied by its train, as the train itself was sufficient warning to the driver of danger. The requirement for signals and warnings as to such crossings is not for the purpose of preventing automobile drivers from running into the side of trains, but is to warn travelers of the danger of an approaching train. *Burkhead* v. *Pennsylvania R. Co.* (1938), 275 Ky. 841, 122 S. W. (2d) 970. We must conclude therefore the driver, Harold Revlett, was guilty of negligence as a matter of law, which proximately contributed to the injury, and if his negligence is to be imputed to the appellee, then the appellee cannot recover in this case.

As to when negligence will be imputed in a case of this kind, an eminent authority has said, "The negligence of the driver is said to be imputed to the passenger where the passenger controls or has the right to control the movement of the vehicle in which he is riding, or where the driver and the passenger are engaged in a common enterprise, or where the driver is engaged in an enterprise of any kind for the use and benefit of a passenger, and is subject to his control." Blashfield's Cyclopedia of Automobile Law, Vol. 2, p. 1145. This statement of the law is approved and quoted in the case of *Chesapeake & O. R. Co.* v. *Warnock's Admrx.* (1930), 232 Ky. 340, 23 S. W. (2d) 558.

The evidence in this case falls far short of establishing as a matter of law that the appellee was guilty of contributory negligence which proximately contributed to his injury or that the negligence of the driver of the car was imputed to the appellee

herein. There was ample evidence from which the jury could reasonably infer that the driver was in control of the car, that the appellee and his son were each going to Lexington on their own separate mission and were not embarked on a common enterprise or was the driver engaged in an enterprise of any kind for the use and benefit of the appellee.

In the present case the evidence establishes that the appellee was familiar with the crossing in question and had been for a great many years, and that he knew of the wig-wag signal system and the red flashing light. There was evidence that the lights were not working and that the same had not been working for a period of about two weeks and had said lights been operating, the same could have been seen by the appellee through the fog, and that the train could not be seen for the fog. Under these circumstances and from the other evidence in the case, the jury might well infer that the failure of said red lights to operate should have been known by the appellant and was an invitation to appellee to cross the track, and that such failure was the proximate cause of the injury. *Louisville & N. R. Co. v. Chas. S. Mahoney, supra.* All the other circumstances, such as the speed with which the automobile approached the crossing, whether or not appellee could have heard the gong sounding, or was justified in relying on said light working; and what, if any, precautions the appellee should have taken for his own safety, were questions properly submitted to the jury and for them to decide. Both sides agree that the jury by its general verdict found that the proximate cause of the accident was the failure of the red flasher to work in the signal; this it had a right to do.

As further grounds for a new trial, the appellant con-

court to instruct the jury to return a verdict for the defendant, and also, in overruling its motion for a directed verdict in its favor at the close of all the evidence. Appellant waived any right to have the first motion considered by afterwards introducing evidence in its own behalf. Watson's Revision of Works Practice and Forms, Vol. 2, § 1583, p. 231. It was not error to overrule the second motion, for the reasons that we have herein set out in discussing whether or not the verdict is sustained by sufficient evidence.

The last specification in appellant's motion for a new trial which is not waived, has reference to the exclusion of defendant's Exhibit O, and reads as follows:

"(23) The court erred in sustaining plaintiff's objection to the introduction and reading in evidence of defendant's Exhibit O, which was the sworn affidavit of plaintiff's witness, Willie Masterson, which affidavit was identified and offered in connection with the testimony of defendant's witness Earl Combs."

As the motion for a new trial does not set out such exhibit or the substance thereof, the question of its admissibility will not be considered and no question is raised. *Greek* v. *Seward* (1944), 222 Ind. 211, 51 N. E. (2d) 3.

Lastly, the appellant, by independent assignment of error, complains that the trial court erred in overruling its verified motion for an order requiring appellee to file an additional non-resident cost bond guaranteeing the payments of cost. This motion was filed after judgment and an appeal had been prayed. If this ruling was error, which we do not hold or pass

upon, due to the fact that this case must be affirmed, such ruling was harmless.

This opinion supersedes our original opinion in this cause filed April 4, 1946, and includes our views on the questions raised by appellant's petition for rehearing.

Judgment Affirmed.

NOTE.—Reported in 65 N. E. (2d) 731.