John BLAIR, Appellant,

v.

**LOUISVILLE & NASHVILLE RAILROAD COMPANY, a Corporation, et al., Appellees.**

Court of Appeals of Kentucky.

May 7, 1965.

Maubert R. Mills, Mills, Spain & Mitchell, Madisonville, Raymond C. Stephenson, Louisville, for appellant.

Carroll Franklin, Franklin & Franklin, Carroll Morrow, Moore & Morrow, R. Giles Eirk, Madisonville, H. G. Breetz, J. F. Wheeler, M. D. Jones, Louisville, for appellee.

MONTGOMERY, Judge.

John Blair sued the Louisville & Nashville Railroad Company, Russell Beshears, administrator of the estate of James Carl Morgan, deceased, and Ashley Franklin. Blair appeals from a judgment based on the verdict for the defendants, now appellees.

Blair was the engineer on an L & N train. The truck of Ashley Franklin, driven by James Carl Morgan, collided with the train at a point where Kentucky Highway 502 crosses the L & N tracks near the Coiltown tipple in Hopkins County. Morgan was killed. Blair claims that he was injured.

Appellant's case against Franklin and Beshears, the administrator, is based on the alleged negligence of Morgan, the truck driver, in failing to see the train and in not stopping the truck. His claim against the railroad company is based on the alleged negligence of a fellow worker in failing to inform him of the approaching vehicle. See Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq.

On appeal Blair argues that he was entitled to a directed verdict and that the court erred in the instructions given.

The collision occurred about 10:30 a. m., on November 21, 1958. The weather was clear. The two-ton truck, loaded with coal, was being driven northwardly. The train, consisting of two diesel locomotives and one car, was moving forward in a westward direction at four to six miles per hour. The truck and front engine of the train collided at the intersection of the tracks and highway, with the truck striking the left side of the front engine.

The jury was instructed on the issues of negligence of the respective parties, as well as on the issue of damages claimed to have been sustained by appellant. The verdict was in favor of the defendants, now appellees. There was no indication as to whether the verdict constituted a finding of no liability or of no damages, or both.

Appellant contends that there is strict liability on the part of a driver who runs into the side of a moving train on a highway crossing. He says that the failure, if any, of the engineer to give a warning was as a matter of law not the proximate cause of the accident because the truck driver was given more immediate and imperative notice by the obvious presence of the train itself. Appellant relies on Louisville & N. R. Co. v. Mischel's Adm'x, 272 Ky. 295, 114 S.W.2d 115; Chesapeake & O. R. Co. v. Switzer, 275 Ky. 834, 122 S.W.2d 967; Illinois Central R. Co. v. Maxwell, 292 Ky. 660, 167 S.W.2d 841; and Louisville & N. R. Co. v. Branson, Ky., 267 S.W.2d 945. Those cases hold that the presence of the train standing on or moving over the track across the highway becomes a condition which is in itself notice to the driver of the obstruction and eliminates the need of giving of notice by the railroad company. Such presence is not deemed negligence or an effective cause of the accident.

The cases cited are inapplicable because the train here was approaching the

crossing at the same time as was the truck. They reached it almost simultaneously. The truck collided with the side of the front unit of the train. As the truck was approaching the crossing, the train was neither moving over it nor standing still on it. Thus, it was not a condition under the principle of the cases cited. This fact distinguishes this case from the cases cited by appellant and justifies the denial of a directed verdict as to the truck driver's estate and to the owner of the truck.

■ Appellant sought to hold the railroad liable under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., by an allegation that the locomotive fireman failed to keep a proper lookout for motor vehicles and failed to give appellant, as the engineer, timely warning of the approaching truck. Although appellant argues the negligence of his fellow employees and seeks to include alleged negligence of the train conductor, the record does not include any pleading which justifies such argument. An amended complaint containing an allegation of negligence by reason of the conductor's failure to keep a proper lookout was offered and withdrawn. Thus, appellant is confined to the alleged negligence of the fireman in failing to keep a proper lookout and to warn the engineer.

On cross-examination appellant admitted that the fireman kept a proper lookout as follows:

"200. I will ask you whether or not the fireman was keeping a look-out at the time you approached that crossing?

"A. Yes, sir.

"201. Was he keeping a proper lookout?

"A. Yes, sir, I think so."

■ In addition there was testimony that the train was traveling slowly and that the fireman first saw the truck when the front part of the engine was about thirty or thirty-five feet from the crossing. At that time the truck was about two hundred and fifty feet from the crossing. At that point the fireman's view was partially obscured by trees and it was not apparent whether the truck would stop or continue across the tracks. In a matter of seconds the fireman determined that the truck was traveling too fast for it to stop, called to the engineer to stop, and appellant immediately applied the brakes in emergency. This evidence, together with the appellant's admission of a proper lookout on the part of the fireman, was sufficient to deny appellant a directed verdict against L & N for failure of the fireman to keep a proper lookout and to give a timely warning.

■ Instructions IV, VI, and VII were to the effect that it was the duty of appellant, L & N, and its servants to ring the bell or sound the whistle and to stop the locomotive as soon as possible to prevent the collision, and that appellant could not recover if contributorily negligent in this respect. KRS 277.190 makes it the duty of the railroad to provide each locomotive with bell and whistle and to ring the bell or sound the whistle, "outside of cities, at a distance of at least fifty rods from the place where the track crosses upon the same level any highway or crossing at which a signboard is required to be maintained, and the bell shall be rung or the whistle sounded continuously or alternately until the engine has reached the highway or crossing."

Appellant contends that it was error to give these instructions on the theory that the presence of the train was in itself notice of the obstruction to the driver, thus relieving L & N and its servants, including appellant, of the necessity of warning by bell or whistle. As has been pointed out, the Mischel, Switzer, and Branson cases, on which appellant relies, have been distinguished from the situation in this case.

The evidence was conflicting as to whether any warning was given by a bell or whistle. Two witnesses testified that either no warning was given or none was heard. Thus, appellant was not entitled to

a directed verdict on this conflicting issue as to the estate of the truck driver and the truck owner.

■ L & N contends that it was entitled to a directed verdict in view of appellant's admission of a proper lookout on the part of the fireman, since his recovery against L & N would have to be based on the fireman's negligence. In view of the verdict for the appellees, it is unnecessary to discuss this contention at length except to say that when error is claimed in an instruction, such error cannot be prejudicial if the party against whom the error is claimed is entitled to a directed verdict. Chesapeake & O. R. Co. v. Switzer, 275 Ky. 834, 122 S.W.2d 967; Louisville & N. R. Co. v. Galloway's Adm'x, Ky., 267 S.W.2d 90; Fryrear v. Kentucky & Indiana Terminal R. Co., 310 Ky. 250, 220 S.W.2d 546. Such is the case here. Redding v. Independent Contracting Co., Ky., 333 S.W.2d 269.

■ Under the circumstances there is no merit in the claim of undue prominence by reference to the bell or whistle warning in Instructions IV, VI, and VII. Number IV defined the duties of appellant and presented the contributory negligence defense of L & N. Number VI set forth the duties of appellant with reference to the contributory negligence plea of the truck driver's estate and the truck owner. Number VII defined the duties of all the agents of L & N in the operation of the train. The fact that the duties of one of the parties were set out in more than one instruction does not give undue emphasis and is not prejudicial to the party upon whom the duties rest. Trent v. Chesapeake & O. R. Co., 221 Ky. 622, 299 S.W. 556; Vandivier v. Tye, 231 Ky. 630, 21 S.W.2d 1006; Wallis v. Illinois Cent. R. Co., 247 Ky. 70, 56 S.W.2d 715.

The evidence was conflicting on the issue of whether appellant received any injuries attributable to the collision. He testified that he was riding on a seat on the right side of the locomotive next to a window, directly opposite a similar window on the left side. The windows were of safety glass and were two feet square. He testified that coal from the colliding truck knocked out the window opposite him and struck him as he was seated about five feet across the cab. He admitted that his glasses were not broken and that he was not cut about the face or body.

Appellant was taken to the hospital and was discharged the next day. He reported for work in seventy-two hours and continued to work from the last of November until January 14, 1959, except for two weeks off for a trip to Texas. He went back to work on January 20 and worked until about April 29, 1959. He had a periodic medical examination by a railroad doctor on April 13. He said that after the accident vibration from the locomotive caused suffering which made it necessary to quit work. Following cessation of work he stayed in a hospital about seven days, during which time he was in traction. He also was supplied with a neck collar. He applied for retirement by the railroad and was retired in October 1959.

Appellant described his pain as follows: "I have a headache that it appears to be something tied around the head right tight, and the pain runs to the back of my neck, and then to my left shoulder, and my left arm has a numb feeling in it and my fingers tingle like they had been asleep at times." He said that he had worn a brace around his body. He was wearing a neck collar at the trial. He said that he wore the collar when in his car and when walking but did not "wear it around home" and had not worn it during the time he had worked after the collision.

Appellant was sixty-six years old at the time of the collision. He said that his health had been good prior to the accident except for aches and pains after a hard day's work which disappeared after a night's rest. Appellees contend that the physical complaints of the appellant, considering all of the medical testimony, are as attributable

to natural causes as they are to the accident. Drs. Calhoun, Bartley, and Glover testified for appellant. Drs. Mayes and Sutherland testified for the appellees.

The only medical testimony that tended to connect appellant's physical complaint with the accident was given by Dr. Glover, an orthopedic surgeon, who examined appellant about six months before the trial. In his opinion appellant had a permanent "disability resulting from traumatic aggravation of an arthritic condition of his cervical spine, dorsal spine, and injury to the muscles and ligaments of the neck, with secondary nerve compression causing pain in proportion to his activity engaged in."

The other four doctors, one of whom was appellant's family physician who had treated him at the hospital, found that appellant was suffering from pre-existing osteoarthritis. None of them found any connection between this condition and the accident.

The court, by Instruction III, told the jury that if they believed that the injuries of which appellant complained were not caused by the collision but were caused at some other time or by some other means they should find for the appellees. No complaint is raised to this instruction.

There is ample testimony on which the jury could have found the verdict for the appellees on the issue of damages. Blair's own statement lacks persuasiveness. Most of the medical testimony, including that of appellant's family physician, indicates that appellant's complaints were not related to the accident. The verdict is adequately supported by evidence that justified the jury in finding for the appellees under Instruction III. Hilsenrad v. Bowling, 292 Ky. 368, 166 S.W.2d 847; Simons v. Allen, Ky., 309 S.W.2d 775.

This case is unique in the respect that there is such a strong conflict in the evidence on the issue of damages. The medical testimony, other than that given by Dr. Glover, shows that appellant's injuries are not attributable to the collision. The conflicting evidence on this issue is an additional reason for denial of the motion for a directed verdict in favor of appellant.

Judgment affirmed.