## L. & N. R. R. Co. v. Engleman's Admx.

(Decided December 15, 1911.)

### Appeal from Lincoln Circuit Court.

1. Railroads—Action Against for Death of Person—Former Opinion.—For a statement of the facts of this case, see 135 Ky., 515. The failure to define the word "customary" in an instruction with reference to the giving of signals, does not render it faulty where the meaning was explained to the jury, and the extent to which the signal should be given.

2. Same—Pleading—Instruction—Measure of Damages.—The measure of damages in every case is such sum as will reasonably compensate the estate of the deceased for the destruction of his power to earn money, and this without regard to the amount sued for, and an instruction failing to inform the jury of the amount sued for was not erroneous.

J. W. ALCORN, BENJAMIN D. WARFIELD, FRED P. CALDWELL for appellant.

ROBT. HARDING, EMMET PURYEAR and P. M. McROBERTS for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

This is the second appeal of this case. The former opinion is found in 135 Ky. 515. The facts are fully stated in that opinion, and for the purposes of this appeal need not be restated here. Upon the former appeal judgment for $10,000 was reversed and the case remanded for a new trial because of error in the instructions. Upon the last trial plaintiff again recovered a verdict for $10,000, and the railroad appeals.

A reversal is sought upon four grounds: first, that the court erred in refusing to peremptorily instruct the jury to find for the defendant; second, that the verdict is not sustained by sufficient evidence, and a new trial should be granted for that reason; third, that the damages are excessive; and fourth, that the court did not properly and fully instruct the jury.

The accident occurred at a private crossing, and upon the former trial there was evidence tending to show that the defendant company, through its agents in charge of its trains, had been in the habit or custom of giving signals of their approach to the Woods crossing, the one at which appellant's intestate was killed. One of the grounds for reversal was that the court had failed to instruct the jury on this point; that is, left it to determine whether or not the agents of appellant road in charge of its trains had been in the habit or custom of giving signals of the approach of trains to this crossing to such an extent that persons living in that locality and using the crossing had reason to rely on such signal being given. Upon the last trial much of the evidence of both plaintiff and defendant was directed toward establishing this mooted question. Plaintiff introduced quite a number of witnesses who testified that it was the

custom of those in charge of trains to give signals of their approach to this crossing, the estimates of these witnesses varying from fifty to ninety per cent, that is, from fifty to ninety per cent of the trains passing over this road signalled for this crossing; and all agreed that this custom was so universally observed that they relied on such signals being given. To combat this evidence the appellant company introduced twelve of its engineers, eleven of whom testified that it was not their custom to signal the train's approach to this crossing, and that they never did so except in cases where they saw someone or something upon or near it. One engineer, the one who was in charge of the train that ran over appellee's intestate, testified that he invariably gave warning of his train's approach to this crossing. It appears that these twelve engineers constitute about one-fourth of the total number of engineers operating trains over this division of appellant's road, and inasmuch as eleven of these men testified positively that it was not their custom to give warning of their train's approach to this crossing, it is urged that this positive evidence outweighs and in fact overwhelms the evidence offered by plaintiff to the effect that it was customary for trains passing over that road to give warning of their approach to this crossing.

To this line of reasoning, however, we cannot subscribe, for, conceding that these eleven engineers who have testified told the truth, they constituted but one-fourth of all the engineers running on that division of the road, and there is nothing in the record to negative the idea that the other three-fourths may not have regularly given warning of their trains' approach to this crossing. Had appellant wanted to show that those in charge of its trains were not in the habit of giving warning of their approach to this particular crossing, it had it in its power to do so by introducing the evidence of all, or at least a majority, of its engineers. The evidence introduced by plaintiff made out a prima facie case of custom on the part of the company to give warning of its trains' approach to this crossing, and this evidence is not overcome by the evidence of less than twenty-five per cent of those operating its trains to the effect that they had not observed such a custom. Certainly, with the evidence in this condition we would not be justified in holding that appellant was entitled to a peremptory

instruction on the ground that plaintiff had failed to show that such custom had been observed by the employees of appellant company. Nor would we feel warranted in holding upon this point that the evidence offered by the appellant was stronger or more convincing than that offered by appellee upon the subject of its custom to give signals at this crossing. This disposes of grounds one and two relied upon for a reversal.

Measured by the standard fixed by this court in some of its earlier opinions as compensation for the loss of a life negligently taken, it is possible that the sum awarded by the jury in this case might be looked upon as excessive; but in its recent decisions a much more liberal policy has been adopted, due, no doubt, to the increased cost of living and the diminished purchasing power of a dollar. Illustrating this fact are cited L. & N. R. R. Co. v. Taylor's Admr., 31 Rep., 1143, where $10,000 was awarded as damages for the negligent killing of a thirteen year old; Board of International Improvement of Lincoln County v. Moore's Admr., 23 Rep., 1885, where $13,000 was awarded as damages for killing a girl fourteen years old; and the recent case of Chesapeake & Ohio R. R. Co., etc. v. Cleotine Ward's Admr., decided December 7th, 1911, where $12,500 was awarded as damages for the negligent killing of a girl 15½ years of age, whose earning power was shown to be about $20.00 per month. In the light of these opinions we would be unwilling to say that $10,000 for the negligent killing of a girl, possessing the talent and earning capacity which the deceased is shown to have had is excessive.

The only remaining question for determination is, did the court properly instruct the jury? The court gave the following instructions:

"If you believe from the evidence in this case that prior to the accident it had been customary for the trains to give signals of their approach to the Woods crossing, and that this custom had prevailed to such an extent that persons using the crossing had reason to rely on such signals being given, and the train in question failed to give reasonable signal of its approach to the crossing, and by reason of such failure the decedent Bessie Engleman was struck and hurt, you will find for the plaintiff in damages such a sum as you believe from the evidence will reasonably compensate the estate of the deceased for the destruction of her

powr to earn money, not exceeding the sum of Thirty Thousand Dollars. Unless you so believe you will find for defendant.

"A signal of the train's approach was reasonable, which was ordinarily sufficient to give notice of its coming to persons who were themselves exercising ordinary care for their safety and in possession of their ordinary faculties.

"It was the duty of the deceased, Bessie K. Engleman, on approaching the crossing, to use such care as may be usually expected of an ordinarily prudent person, to learn of the approach of the train and keep out of its way; that, if the crossing was especially dangerous, it was incumbent on her to exercise increased care, commensurate with the danger; and if you believe from the evidence that she failed to exercise such care and but for this would not have been injured, then the law is for the defendant and you should so find, even though you may believe from the evidence that the defendant, or its employees were negligent as set out in instruction Number 1.

"Ordinary care, as used in these instructions, is that degree of care which a person of ordinary prudence would exercise for his or her own safety under the same or similar circumstances."

It is urged that the instructions as a whole are faulty because the court failed to define the word "customary" as used in instruction number one. This point is not well taken, for the reason that, in instruction number one, the meaning of the word "customary" as used therein is explained to the jury, for they are told that this signal must have been given "to such an extent that persons using the crossing had reason to rely on such signals being given." With this explanation it is impossible that the jury could have failed to understand the meaning of the word "custom," or "customary," as used in this instruction; and in the light of this explanation no additional instruction defining the word "customary" could have in any wise aided the jury.

The case of Houston, et al. v. Peters, Hardin & Co., 1 Met., 561, is relied upon as supporting appellant's contention that the word "custom" should have been defined. An examination of this case, however, shows that the court in that opinion says:

"The court should have instructed the jury precisely as to the character of custom which would have been available to the defendants, and then have left the jury to find whether or not such custom were proved."

That is exactly what the court did in instruction number one. He told the jury that if those in charge of appellant's train had given signals of the trains' approach to this crossing "to such an extent that persons using the crossing had reason to rely on such signals being given, etc., you will find for the plaintiff," thus clearly defining the extent to which the custom must have prevailed before the appellant company could be charged with the duty of giving a signal at all for this crossing.

A further objection is made to instruction number one in that the court failed to tell the jury that the maximum limit which might be placed upon the value of the life taken was the amount claimed in the petition. The instruction fixed the amount, to-wit, $30,000, but failed to inform the jury that this was the amount sued for. While it has been the generally accepted practice in trial courts in this State to limit the recovery to the amount claimed in the petition, the measure of damages in every case is such sum as will reasonably compensate the estate of the deceased for the destruction of his power to earn money, and this without regard to the amount sued for. In some jurisdictions, in instructing the jury, no mention is made of the amount sued for, and the jury is left to say what is right and proper under the circumstances as a fair compensation for the value of the life taken, without an intimation as to what sum the plaintiff seeks to recover. There is much to be said in favor of such a practice; but in this State the universal rule has been to instruct the jury that they must award such a sum as will compensate the estate of the deceased for the destruction of his or her power to earn money, not exceeding, however, the amount sued for. We fail to see wherein the omission of the words "the amount sued for" or "the amount claimed in the petition" in any wise prejudiced appellant's rights. The jury was in fact limited in its award to $30,000, and this was the amount sued for.

Instructions in which these words were omitted have frequently been approved by this court. In Schneider v. McGill, 23 Rep., 587, the instruction

fixing the measure of damages authorized a recovery for both compensatory and punitive damages, the instruction closing with these words, "but in no event to exceed the sum of $5,000." This was the amount claimed in the petition, though the instruction did not so state. That case was reversed and that instruction condemned, but not on account of its failure to state that the $5,000 was the amount sued for or the amount claimed in the petition. Again, in Cross v. Illinois Central R. R. Co., 110 S. W., 290, where the case was reversed and remanded for a new trial and the court directed to give certain instructions prepared by this court, in the instruction fixing the measure of damages the court was told to direct a recovery "not exceeding in all the sum of $10,000." This was the amount sued for, though in the instruction the jury was not so told. In Weiskoff v. Ritter, 29 Rep., 1269, the lower court had instructed the jury that they might award damages, compensatory and punitive, "not exceeding in all $10,000," and upon consideration here this instruction was approved. Again in Croker v. Haley, 92 S. W., 574, the case was reversed and the lower court directed to give, in lieu of certain instructions given upon the former trial, an instruction defining the measure of damages, in which the jury was limited in its finding to a sum "not exceeding in all $10,000," the words, "the amount claimed in the petition" or "the amount sued for," being omitted in this instruction. The addition of the words "the amount sued for," or "the amount claimed in the petition" cannot add anything to the sum which plaintiff is entitled to recover, nor can their omission detract therefrom. The recovery in cases for injury is limited to the damage done, as shown by the proof, and in cases of death to such sum as will compensate the estate of the deceased for the destruction of his or her power to earn money. The case of Gilbertson v. Forty-second Street Ry. Co., 14. App Div. 294, N. Y., relied upon by counsel for appellant as supporting a contrary view, cannot in the light of the repeated adjudications of this court be accepted as authority. The reasoning of the court in that opinion in highly technical and the conclusion reached far from satisfactory.

Lastly, it is urged that the court erred in failing to instruct the jury in instruction number one that the

earning power of the deceased from the time of her death until she reached her majority could not be taken into consideration, that is, as deceased was sixteen years of age, her earning power belonged to her mother, and her administrator was not entitled to recover for this period. The fault of this argument lies in the fact that the right of the parent to the services of a child ceases with its death. The moment that Bessie R. Engleman was killed the right of the parent to her services ceased. This question was directly involved in the case of Harris v. Kentucky Timber & Lumber Co., 19 Rep., 1731, where the court said:

"It is a familiar principle of common law that the death of a human being could not be complained of as an injury in a Civil Court. It could not be made the grounds for an action for damages. It is only when the statute or constitution provides for recoveries for injuries resulting in death that an action can be maintained. * * * The right of the father to the services of his son ceased and determined at his death."

Hence the parents of the deceased child could not sue for loss of services as their right to such services ceased with her death. The award, in cases of this character, is not for services, but for the destruction of the decedent's power to earn money. As held in L. & N. R. R. Co. v. Kemble's Admr., 140 Ky., 759, a girl nine years old has an expectancy of living thirty-nine years longer. "Her expectancy is hers, not her father's, though her services, until she is twenty-one years old, may belong to him. But the jury do not award compensation for her labor. It is for the destruction of her power to earn money, a power which is hers alone, and while it may be difficult to prove, is nevertheless of certain and substantial value."

A different rule would undoubtedly apply if this were an action for damages resulting from an injury, when, in such case, the parent would be entitled to recover for loss of services during the minority of his child, and the child would be entitled to recover for any permanent impairment of its power to earn money. But as the right of the parent to the services of the child ceased with the death of the child, no cause of action exists in the parent for loss of services, and the only action which may be maintained in such cases is one for the destruction of the decedent's power to earn

money. Hence the court did not err in refusing to modify instruction number one as indicated by appellant it should have been.

Upon the whole case we fail to find any error which would justify a reversal. Two juries have heard the facts, and in their verdicts have said that $10,000 is a fair and reasonable compensation to the estate of deceased for the destruction of her power to earn money, and we are unwilling to disturb that finding.

Judgment affirmed.