# Coil's Administratrix v. Chicago, St. Louis & New Orleans Railroad Company et al.

(Decided December 10, 1929.)

C. J. WADDILL and J. A. JONSON, for appellant.

GORDON, GORDON & MOORE for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

The Dixie Bee Line concrete highway runs from Madisonville to Earlington. About halfway between the two towns a spur railroad track, connecting with the Hart coal mines, crosses the highway at grade. The

Madisonville Country Club is located about half a mile beyond this spur track crossing. Frank E. Coil was a member of the country club. On Saturday, April 30, 1927, they had a supper at the club, and the party broke up about 12 o'clock. Coil started to Madisonville in his car. As he approached the track, he ran through a cut which concealed a view of the railroad, and then he came over a hill close to the railroad crossing. A train was on the track, but he did not see it until he was very close to it. He then undertook to turn to the right, and ran into the train; his car was smashed up, and he was killed. This action was brought against the railroad company to recover for his death. The jury, to whom the case was submitted, found for the defendant. The plaintiff appeals.

The plaintiff proved by one witness that he had approached this crossing; his engine got out of fix and he had stopped just before reaching the crossing; that the train was on the crossing then and was moving east; he pulled off the highway into a driveway, and, while he was there, Coil passed in his car, and ran into the train; the first he knew after Coil passed was when he hit the train.

On the other hand, the defendant showed by the conductor and other trainmen that, when it became necessary to back the cars over the highway, the conductor sent a brakeman to the highway, who stood in the crossing to give every one notice, and remained there until the cars came past. When the cars passed, he got upon the second car, which was standing over the road, with his lantern, and, while standing there, he heard Coil coming. He hollered, but Coil, who was running very rapidly, did not hear him, and ran into the car. The engine had cut loose from the cars for a few minutes to put one of the cars in the train on a side track, and about the time that Coil hit the train the engine came back and coupled onto these cars. It probably began to move them out just as Coil hit, for the tracks of Coil's car showed that he hit east of the highway, and his body was found on the highway with his feet in the car. The whole thing happened in a few minutes, and, under all the evidence, it is clear that Coil ran into the car standing across the highway. The court gave the jury these instructions:

> "The court instructs the jury that if they shall believe from the evidence in this case that the defendants negligently failed to give reasonable sig-

nals or warnings to notify the public using the high- way mentioned in the evidence of the presence of a train of cars across said highway on the occasion of F. E. Coil's injury, and that F. E. Coil was using ordinary care at the time in driving his automobile on said highway, then you should find your verdict for the plaintiff; but unless you do so believe you should find your verdict for defendants.

"The court instructs the jury that by the term 'negligence' as used in these instructions, is meant the failure to exercise that degree of care which an ordinarily prudent man would usually exercise under the same or similar circumstances.

"Ordinary care is such care as an ordinary prudent person would usually exercise under the same or similar circumstances.

"The court instructs the jury although the jury may believe from the evidence that the defendant, Illinois Central Railroad Company, was guilty of negligence causing the death of decedent, Coil, yet if they further believe from the evidence that said Coil was negligent and that said Coil's negligence caused or contributed to cause his death to such an extent that but for such negligence on the part of said Coil, he would not have been injured, then the law is for the defendant and the jury will so find."

Appellant complains that the court gave no instruc- tion under section 773, Ky. Stats., which provides that every railway company shall keep signal boards at every railroad crossing. But this section has no application, for Coil knew the crossing as well as anybody, and the signal boards at night would have served no good pur- pose, under the circumstances here shown. The stand- ing freight train, with a brakeman standing on top of the car in the middle of the highway with a lighted lan- tern certainly gave more notice than the signal boards could have given. L. & N. R. Co. v. Foster, 230 Ky. 157, 18 S. W. (2d) 983.

Appellant also complains that the court gave no in- struction under section 786, Ky. Stats., which provides that a whistle must be blown or the bell rung continuously at least 50 rods from the crossing as a train approaches the crossing. This section is designed to protect travel- ers from the approach of the trains. In the case at bar, the conductor sent the brakeman with a lantern to stand on the crossing until the train passed. When the train

stopped, with one car east of the crossing, the second car on the crossing, and other cars west of the crossing, the engine was cut off to put one of the cars on another track, and, to give notice while the engine was gone, the brakeman climbed up on top of the car, standing on the car, and, while he was so standing there, the collision occurred. About the time of the collision, the engine returned to the train, and, when it began to pull the train out, the brakeman gave the signal, and this seems to account for the fact that when the deceased was found he was lying on the concrete road and not where the car had first hit the train, a little east of the road. He had gone about half a mile, running rapidly; he would run this half mile in about one minute and no amount of signals given before the train was placed upon the crossing would have been of any avail to him, for this was evidently before he left the country club. L. & N. R. R. Co. v. Foster, 230, Ky. page 157, 18 S. W. (2d) 983.

The defendant also complains that the instructions are abstract and should have been made more concrete, and that, under the evidence, the court should have told the jury that the crossing was especially dangerous, and increased care, commensurate with the danger, should have been used. But it is hard to see what additional care the railroad men could have used, unless they had sent a man down the road to warn approaching cars of the danger. A brakeman was standing on top of the car with a light, and, before Coil came in sight, he was hollering to warn him of the danger. The real question in the case was whether Coil used ordinary care in running upon the railroad track so rapidly when he could not see the track until he came over the hill and started down. The proof shows that the lights of his car passed over the railroad train and did not throw any light upon it until he got very close to it. His car was broken all to pieces by the collision. The violence with which it struck the train shows that he must have been running very fast. The verdict of the jury in favor of the defendants was evidently based upon the ground that he had failed to exercise ordinary care, and on the whole case the court is unwilling to disturb the finding of the jury. It is thrice provided in the Civil Code that no judgment shall be reversed for any error not affecting the substantial rights of the party complaining. The plain meaning of this thrice repeated provision is that, when a case has been tried upon its real merits, a new trial shall not be

awarded and litigation prolonged upon unsubstantial grounds. The instructions of the court followed the rule laid down in L. & N. R. R. Co. v. Allnutt, 150 Ky. 839, 151 S. W. 14, 18:

"No exact measure of duty can be laid down that would be applicable to all crossings. At each public crossing the railroad company must use that degree of care that is reasonably sufficient for the purpose of giving notice and warning of the movement of trains and cars to the public having the right to use the crossing, and this degree of care depends on the situation and surroundings of the crossing, the number of trains using it, and the number of the public who use it."

Judgment affirmed.