## Scarbrough v. Louisville & N. R. Co.

### Hunton v. Same.

Jan. 13, 1939.

293

H. W. VINCENT for appellants.

RODES & WILLOCK, ASHBY M. WARREN, J. MILLER WHITE and H. T. LIVELY for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

These two cases were brought to recover damages sustained by the appellants, plaintiffs below, in each case, resulting from a collision of an automobile in which they were riding, with a train of appellee, Louisville & Nashville Railroad Company. The automobile was owned and being driven by appellant Hunton, and appellant Scarbrough was a guest in Hunton's car. The two cases were consolidated and tried together in the court below and consolidated on the appeal, and will be disposed of in one opinion.

For this cause of action, Hunton, owner and driver of the car, stated as follows:

"Plaintiff states that on or about the 22nd day of December, 1936, between the hours of 10 and 12 o'clock P. M. while traveling in a southerly direction on Potter Street, he suddenly saw across said Potter Street a railroad car sitting on a track, which is owned and operated by the Louisville and Nashville Railroad Company, the defendant herein; that at the time he discovered the said railroad box car, he was too close to stop; that the said box car was being handled in a negligent and careless manner, in that there was no light on its sides and that there was no one on the side directly in front of the plaintiff with a light or other signal of warning, and that there was nothing whatever to warn the traveling public or this plaintiff that said street was so negligently obstructed; that in order to avoid a head on collision, this plaintiff attempted to swing to the left into an alley; that he was so close upon the box car, he was unable to make the turn without striking a portion of the train, which was at a complete standstill * * *."

He then described his personal injuries sustained as result of the collision and also the damages to his car and asked to recover $1,000 for his personal injuries and

$300 for damages to his car. The allegations of the petition of Scarbrough in respect of the cause of the collision and alleged negligence on the part of the appellee railway company are substantially the same as those of Hunton.

At the close of the evidence for the plaintiffs the court peremptorily instructed the jury to find a verdict for the defendant as to Hunton, and at the close of all the evidence the court likewise peremptorily instructed the jury to find a verdict for defendant as to Scarbrough. Both the plaintiffs have appealed.

It is insisted for appellants that the evidence is sufficient to take the cases to the jury on the issue of negligence on the part of the appellee, and that the court erred in peremptorily instructing the jury to find for appellee.

It is shown in the record that Potter Street on which appellants were driving is thirty feet wide and perfectly straight for a distance of approximately 300 feet north of the railroad tracks which cross the street at right angles. Also there is a railroad crossing signpost on the north side of the railroad tracks and on the south side there was a city street light. It is stated in brief that there was a map made and used in the trial of the case, but that same has been lost and is not with the record. However, there is contained in brief of appellee a copy of the map on a smaller scale which is said to be a correct one. The correctness of this map not being disputed by appellants by reply brief or otherwise, we assume it shows the correct situation of the premises. It is shown by this map and also by the evidence, aside from the map, that there was nothing to obstruct the view of the railroad crossing or to otherwise bring the crossing within that class known as unusually dangerous or hazardous. Appellant Hunton, the owner and driver of the car, testified that the street was straight for some distance from the railroad crossing and that he was operating his car "around twenty-five or thirty, or maybe thirty-three or four" miles per hour, but he did not know exactly because he was not watching the speedometer; when he approached the crossing there was an automobile parked in front of him close up to the crossing and that the automobile had no rear light and he did not see it until he was within close distance of it. He varies the distance from twelve, fifteen, twenty, or

possibly twenty-five feet; when he saw the parked car he swerved to his left in an effort to avoid striking it and tried to turn into an alley which intersected the street at his left but failed to make the turn into the alley and ran across the north track in a diagonal direction, and his car struck the engine of the train on the south track about twenty feet east of the crossing. He said his headlights were as good as the average headlights used on cars and his brakes were in good condition and that he applied his brakes when he saw the car parked in front of him; but on cross-examination he said: "I don't know whether I applied my brakes just like I should or not." According to his description or estimate of the distance from the place where he first saw the car parked in front of him to the point where he struck the train or engine, it is thirty to thirty-five feet. The evidence of appellant, Scarbrough is in substance about the same as that of Hunton. The evidence strongly indicates negligence on the part of Hunton, who was driving the car, but since his negligence, if any, might not be attributable to Scarbrough, the guest, we will first determine whether or not there was any negligence on the part of appellee. The only negligence alleged and atempted to be proved, is that appellee failed to have any lights on the side of the train or box cars which obstructed the street crossing or to have any person or other means of signaling or warning the travelling public that the street crossing was obstructed by the train. Appellants insist that appellee's failure in that respect constituted negligence and, to support their position they rely upon the cases of Big Sandy & Kentucky River Railway Company v. Blair, 224 Ky. 367, 6 S. W. (2d) 453; and Wallis v. Illinois Central Railroad Company, 247 Ky. 70, 56 S. W. (2d) 715. An examination of those cases discloses that the facts involved in them are unlike the facts in the cases at bar. In the first case cited above the question involved was the duty of the railroad company to give signals required by Kentucky Statutes, Section 786, and to keep a lookout when approaching a country road crossing. In that opinion it is said [page 454]:

> "The evidence discloses that this was merely a country crossing, and such as to fall clearly within the rule announced in Louisville & Nashville Railroad Company v. Molloy's Adm'x, 122 Ky. 219, 91 S. W. 685 [28 Ky. Law Rep. 1113] where it was

said: 'The rule is that at ordinary highway crossings in the country no rate of speed is negligent, but that, where the speed of the train is great, care in giving warning of the approach of the train commensurate with the danger must be observed'"

In the last case cited above there was involved also the question of warning when approaching a country road crossing. In the cases at bar the question of giving warning of the approach of a train is not involved. The only question is, whether or not appellee was negligent in failing to have lights on the side of the train or cars which obstructed the street, or to have someone stationed at or near the crossing to inform the traveling public of the obstruction of the crossing. It is thus seen that the cases at bar presented a state of facts different from those in the cases relied on by appellant.

It is our view that the present cases come within the facts and rule announced in Louisville & Nashville Railroad Company v. Mischel's Adm'x, 272 Ky. 295, 114 S. W. (2d) 115. In that case it was alleged that about two A. M. December 17, 1935, while riding in an automobile driven by R. P. Payne, the automobile collided with a freight car standing directly across highway No. 60 causing Miss Mischel's death. The crossing was described as being an infrequently used switch track crossing the highway into properties of the Glenmore Distillery. The petition further alleged that it was a dark, foggy night and that there was no light upon or about the freight car, and thus the occupants of the automobile were unable to see the car standing on the crossing, "which car the defendant grossly and negligently permitted to remain, without giving the driver of the car or his guest any warning or signal with lights or otherwise, so as to warn them of the presence of the car." The pleadings were based on the theory, and proof was introduced to show, that the crossing was a dangerous one, because of the presence of trees and signboards so situated as to obstruct the view of one approaching the crossing, and without sufficient light to warn a traveler. Other evidence introduced as bearing on the claim that the crossing was dangerous consisted of proof that Owensboro was a city of a population of about 35,000; the distillery plant employed about 500 persons, and the highway at this point was much traveled.

In discussing the question of whether the railroad

company was negligent under the facts pleaded and attempted to be proved, the court said:

"The law applicable here must be determined from the facts relating to the place and its condition or situation at the time of the accident. This is not a case where injury was caused by a moving train, operators of which had failed to warn the traveler by blowing a whistle, ringing a bell, and (in some instances) observing the 'lookout' requirement. Here we have a box car across the highway, at a place where its owners and operators had the right to have it, and where, as shown by the proof, it had been standing for an appreciable length of time. The dangerous quality of the crossing must be measured by the situation and condition as shown by the facts, and when such a situation is presented (as here), one crossing can hardly be said to be more dangerous than another, unless the geographical or topographical situation makes it so, as was apparently the case in Coil's Adm'x v. Chicago, St. L. & N. O. Railway Company, 232 Ky. 33, 22 S. W. (2d) 428, and Louisville & Nashville Railway Company v. Mahoney, 220 Ky. 30, 294 S. W. 777. These cases are distinguishable. In the first-named case the traveler, in approaching the track upon which a train was running, 'ran through a cut which concealed a view of the railroad, and then he came over a hill close to the railroad crossing.'

"In the Mahoney Case the proof showed there was a sharp turn in the highway very near to the crossing, so that it was well-nigh impossible for the traveler to see a train until almost reaching the track. However, as we read that case (and it is to some extent relied upon by appellee), the court upheld the verdict mainly on the ground that a wig-wag signal, which had theretofore been in operation, and this operation known to and relied upon by the traveler, was not working at the time of the accident. However, all the proof in this case goes toward showing and does show that the highway was perfectly straight for a distance of more than 1,000 feet east of the crossing in question. The proof also shows that the right of way was 68 feet in width, the traveled portion being 18 feet wide.

It is inconceivable how the shrubbery, trees, or sign-board described constituted an obstruction to the view of the traveler approaching the crossing. In .fact, it is difficult to construe the testimony of witnesses testifying on this point as tending to show that the presence of the alleged obstructions had aught to do with the accident in question. We can conceive, as was intimated by the witness, Payne, that if a train or engine be moving from either of the plants, one approaching from the east might have difficulty in seeing it before nearing the crossing; the same might be said of a train approaching from the south, but we have neither situation. Before negligence can be attributed to appellant, it must be satisfactorily shown that it violated some duty owed to a traveler in an automobile under the existing circumstances and conditions.

''It is contended by appellee that the appellant, under the facts shown, should have placed servants on each side of the train with lights, so as to warn travelers, or have adopted some other (not shown) method to notify travelers that a train was standing across the highway. We are cited to no authorities which would lead us to attempt to lay down a rule embodying that principle. It is not argued that appellant failed on the occasion to have or give all signs and warning required by statute. Sections 786, 773, Kentucky Statutes.

''After some search, we have been unable to find in our jurisdiction cases which discuss the precise question here presented. However, there appear to be many in other jurisdictions, which, due to the peculiar similarity of facts, seem to be conclusive.''

There are cited in that opinion cases from numerous jurisdictions where the facts are substantially the same as those in the cases at bar. . The opinion speaks for itself and reference to it is sufficient without further quoting therefrom. In all those cases it was held that the railroad companies involved were not guilty of negligence because of their failure to have their trains lighted or otherwise give warning to the traveler that the trains were occupying the highway crossings.

Upon examination of the evidence, particularly ap-

pellants' own evidence, we are unable to distinguish this case from the case of Louisville & Nashville Railroad Company v. Mischel's Adm'x, supra, and cases cited therein. We are constrained to the conclusion, therefore, that appellants utterly failed to show any negligence on the part of appellee. These conclusions make it unnecessary to determine whether Hunton, the driver of the car, was negligent, and if so, whether his negligence is attributable to Scarbrough.

From what has been said it follows that the court did not err in peremptorily instructing the jury to find a verdict for appellee in both cases.

Wherefore, the judgments are affirmed.