## Illinois Central R. Co. v. Maxwell.

Jan. 15, 1943.

Doolan, Helm, Stites & Wood and Gordon, Gordon & Moore for appellant.

Charles G. Franklin and Clifton J. Waddill for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The appellee, Joe Maxwell, ran his automobile into

a coal car standing across a highway and suffered personal injuries. His suit against the Railroad Company was submitted to the jury on the issue of whether it had been customary for the company to have a flagman or lighted flares at the crossing to give warning of the presence of trains or cars standing across the road at night and on this occasion it had not followed that custom. The issue of plaintiff's contributory negligence was likewise submitted. The Railroad Company appeals an adverse judgment for $900.

The appellee was driving a coupe and had another young man and two married women on the seat with him. They had visited several roadhouses during the night, but it is not shown they were intoxicated. At about three o'clock in the morning, while driving at thirty miles an hour, one of the party saw the train and as he shouted the appellee swerved the automobile and seems to have struck the train sideways. He testified that when he became conscious the train was moving and his automobile was being bounced around and dragged back to the middle of the road. It was a dark and foggy night. There were large signboards with reflectors on the side of the road indicating the proximity of the railroad crossing. The appellee was familiar with the situation. He testified that he knew he was in the neighborhood of the crossing but did not realize that he was close to it. He did not observe the signboards for he was keeping his eyes on the road. The road is straight for some distance and slightly declines, which fact he and others testified caused the headlights of automobiles to shine beneath a railroad car standing over the crossing. Maxwell testified:

> "I was looking for a light. I knew the railroad was on that road and if there was any train there, there would be a headlight from the train or some noise that I would know there was a train close to the crossing or if there was a train blocked across the road, I would know there was a light there. There always had been there when I was across there."

Other than as to a light always being there the only contradiction up to this point is that the railroad men testified the train did not move until after attention was given the occupants of the automobile. The plaintiff did not undertake to disclose what part of the coal car was struck other than the implication that it was about

the center because the lights shone beneath it, but the railroad employees found pieces of the automobile near the front of the car over its wheels.

In the absence of a statutory regulation, the liability, if any, of a railroad company for injuries resulting from a collision of an automobile with a car or train standing on a road crossing is based upon common law negligence. The relative rights of the railroad company and an automobile are co-equal. Generally, the presence of a train is itself notice to the driver of the obstruction and there is no duty resting upon the railroad company to station guards, place lights, or otherwise give warning of the presence of the car. The presence of the standing car is not negligence or the effective cause of such an accident. It is only a condition. The railroad company is justified in assuming that motorists will have lights and will drive so as to be able to see the train and bring the automobiles to a stop. The same rule applies to moving trains. 44 Am. Jur., Railroads, Sections 501, 502; Annotations, 15 A. L. R. 901, 56 A. L. R. 1114, 99 A. L. R. 1454. We have recognized this concept of duty and right in a number of cases which are reviewed in Louisville & N. R. Co. v. Mischel's Adm'x, 272 Ky. 295, 114 S. W. (2d) 115, and Chesapeake & O. R. Co. v. Switzer, 275 Ky. 834, 122 S. W. (2d) 967. In those cases a fog obscured the view of the motorists. A later case in which liability of the railroad company was claimed because of the failure to have lights on the side of the train or car is Scarbrough v. Louisville & N. R. Co., 276 Ky. 292, 124 S. W. (2d) 88. We have, however, also recognized that a peculiar condition or practice may impose a duty upon the railroad company in this respect, the violation of which makes it liable. Thus, in Coil's Adm'x v. Chicago, St. Louis & N. O. R. R. Co., 232 Ky. 33, 22 S. W. (2d) 428, the track was concealed from view, and in Louisville & N. R. Co. v. Mahoney, 220 Ky. 30, 294 S. W. 777, there were an obstructed view and an abrupt turn in the road; furthermore, the railroad company had maintained an automatic electric red light, bell and wig-wag to warn travelers of the approach and presence of a train, and the plaintiff had relied upon this on a rainy night. The evidence showed the signals were not operating.

The rule of customary practice and the right to rely upon it in a case of this kind is like that relating to the

approach of a train to a private crossing. Thus, a train may approach and run over a private crossing without signals unless it has been customary to give reasonable and timely signals and persons using the crossing were accustomed to rely upon them. Where it had been customary to do that and the traveler relied upon receiving such warning, the failure to give it is negligence. Chesapeake & O. R. Co. v. Young's Adm'x, 146 Ky. 317, 142 S. W. 709; Kentucky Traction & Terminal Company v. Brawner, 208 Ky. 310, 270 S. W. 825; Illinois Cent. R. Co. v. Applegate's Adm'x, 268 Ky. 458, 105 S. W. (2d) 153. It is also the same principle as that applied where the railroad customarily maintained a watchman or gate at a dangerous public crossing and in a particular instance the flagman was absent or the gate open. The absence of the watchman or the open gate is an assurance of safety and the equivalent of an invitation to a traveler to proceed. Cincinnati, N. O. & T. P. R. Co. v. Prewitt's Adm'r, 203 Ky. 147, 262 S. W. 1; Southern R. Co. v. Burkholder, 264 Ky. 796, 95 S. W. (2d) 589.

The plaintiff sought to establish the practice or custom of the defendant to have a flagman with a lighted lantern or burning flares in the road to warn motorists of the presence of a standing car across the highway. The court instructed the jury that if they believed that was a custom which "prevailed to such an extent that persons using the crossing had reason to rely upon such warning being given and that on the occasion in question" that was not done and by reason of such failure the collision occurred, the jury should find for the plaintiff; and unless they so believed they should find for the defendant. The form of the instruction is criticized by the appellant, but it becomes unnecessary to consider it.

The facts and contentions of right in Rhine v. Duluth, M. & I. R. Ry. Co., 210 Minn. 281, 297 N. W. 852, 853, 854, are strikingly like those in the case at bar. It is therein said:

> "The essential elements of a custom are stated in Chicago, M. & St. P. R. Co. v. Lindeman, 8 Cir., 143 F. 946, 949, thus: 'A custom has the force of law and furnishes a standard for the measurement of many of the rights and acts of men. It must be certain or the measurements by this standard will be unequal and unjust. It must be uniform; for, if it vary, it furnishes no rule by which to mete. It must be

known, or must be so uniform and notorious that no person of ordinary intelligence who has to do with the subject to which it relates and who exercises reasonable care would be ignorant of it; for no man may be justly condemned for the violation of a law or a custom which he neither knows nor ought to know. In short, a binding custom must be certain, definite, uniform, and known, or so notorious that it would have been known to any person of reasonable prudence who dealt with its subject with the exercise of ordinary care.' "

The definition or test is that generally recognized. Words and Phrases, Perm. Ed., vol. 10, pp. 728, 732. In its fullness, however, it more particularly applies as constituting part of a contract. In a matter of tort it is much more limited. 38 Am. Jur., Negligence, Secs. 34, 317. It is here a question of habitual action by one person upon which another had the right to rely in governing his own course. Whether the practice prevailed to that extent is usually a question for the jury. Louisville & N. R. Co. v. Engleman's Adm'r, 135 Ky. 515, 122 S. W. 833, 21 Ann. Cas. 565, second appeal, 146 Ky. 19, 141 S. W. 374.

If the railroad company had established the custom as thus defined of having a guard or warning light at the crossing where this accident occurred, it would have the same force and effect of law which we recognize in relation to the approach of trains to a private crossing. That is not a statutory law, such as is laid down for signaling the approach to a public crossing, but it is just as effective in defining the duty of the railroad company and the corresponding right of a traveler. By way of distinction, we may note Daniel's Adm'r v. Hoofnel, 287 Ky. 834, 155 S. W. (2d) 469, 473, where, in an action for damages against a private policeman and his employer for the killing of a person, it was claimed the policeman had followed a general custom or practice of police officers to fire at automobile tires in order to stop a car violating the speed laws. The testimony had been admitted as affording a test or proof of ordinary practice or as evidence of reasonable care. We said:

"This rule cannot be extended to practices which are obviously dangerous. Custom does not change the quality of an act, and when that quality appears from the act itself, a custom or practice cannot avail

to establish as sufficient in law that which is dangerous in fact.''

The situation in this case is the converse of that, for it is claimed by the injured person that the alleged wrongdoer or negligent person had itself established a method of protecting persons similarly situated and that he relied upon that protection. The defendant in that case relied upon a wrongful practice to justify the particular wrongful act, while the plaintiff in this case sought to establish the right to rely upon the failure to observe a proper and wholesome practice. The question is whether the evidence was sufficient to show that the railroad company had adopted a method and followed it to the extent that it may be said to have been usual or customary.

The accident happened at what is called the West Yards, a short distance from Madisonville. Just east of the road there are several tracks but only the single main line across the road. On this occasion a caboose had been left on one of these side tracks. The locomotive, with a string of 38 cars, had pulled over the road, then backed a short distance on to the siding for the caboose. It was being coupled on when the automobile struck the eighth car from the engine. There was no switching operation other than this. The switch and the caboose were so near the highway and the train so long that the road had been blocked by the moving or momentarily stopped train from the time the engine first passed over.

Other than his testimony above quoted, the plaintiff testified, ''If there was a train blocked across the road I would know there was a light there; it always had been there when I was across there.'' Asked particularly about what was the custom of the railroad company in regard to warning travelers on the highway ''when trains are stopped there at night,'' he answered: ''Always when I traveled it they had a fellow with a lantern there or a little red light.'' On cross-examination he repeated that it was the custom of the railroad company to keep a flare or flagman at the crossing. Further: ''Q. Speaking of the custom of the railroad company to put out flares or have a flagman there, is that on occasions when the train is switching, or when the cars are moving ahead? A. I go there and when they are stopped they have them out. Moving trains don't have them. Q. It is not the custom of trains in motion to have flares? A.

If they are switching, they put flares out or have a flagman.'' A witness testified broadly that it was the ''custom to protect the crossing,'' but qualified his statement when asked specifically as to cars standing across the road, ''If a train was standing still I don't know whether they would protect the crossing, but if they are switching it would be customary to have a flagman there.'' Being asked to confine his testimony to the specific condition, the witness replied: ''I have passed there when there wasn't anybody out there, and I have passed there when the trainmen flagged you down, specifying they were using it.'' There was additional testimony of like kind by persons who traveled the road or lived nearby although most of it was more definitely qualified as to the flagman or flares being at the crossing during switching operations or only part of the time. The testimony of several trainmen was that the warning described was usually observed when there was switching back and forth across the road and that it was never done when a train was passing over or merely blocking the road as on this occasion.

As stated in Aulich v. Craigmyle, 248 Ky. 676, 59 S. W. (2d) 560, 562:

> ''To establish a custom it is not enough to prove the act is frequently done; it must be both alleged and proven to be certain, general, uniform, and recognized.''

And, as stated in note, 45 C. J. 710:

> ''A custom, the failure to observe which will constitute negligence, must be certain, uniform, and invariable, and must also be notorious and known to all persons of intelligence having to do with the subject to which it relates. Fogarty v. Michigan Cent. R. Co., 180 Mich. 422, 147 N. W. 507.''

We are of opinion that the evidence falls so far short of meeting this test in its application to the uncontradicted facts and the facts most favorable to the plaintiff that it must be deemed insufficient to have authorized the submission of the question to the jury. Without having proved that ground of negligence, upon which liability had to be predicated, or any other, the court should have peremptorily instructed the jury to return a verdict for the defendant.

The judgment is reversed.