Kenneth GIBSON, Appellant,

v.

LOUISVILLE AND NASHVILLE RAIL-
ROAD COMPANY, Appellee.

LOUISVILLE AND NASHVILLE RAIL-
ROAD COMPANY, Appellant,

v.

J. D. HARTMAN, Appellee.

Court of Appeals of Kentucky.

June 12, 1964.

Rehearing Denied Oct. 30, 1964.

Carroll Franklin, Laurence T. Gordon, Franklin & Gordon, Madisonville, H. G. Breetz, M. D. Jones, Louisville, for L. & N. R. Co.

L. B. Weir, Madisonville, for Gibson and Hartman.

CLAY, Commissioner.

This is a railroad crossing case. An automobile driven by Gibson, with whom Hartman was riding as a passenger, collided with a coal car of the defendant railroad company as its freight train was moving slowly over a country crossing. Both men sued for damages.

The trial court directed a verdict for the defendant on the claim of Gibson (on the ground of contributory negligence). Hartman's claim went to the jury, which re-

turned a verdict of $17,000 for him. On these consolidated appeals Gibson contends it was error to direct a verdict against him, and the defendant contends it was error not to direct a verdict for it with respect to the claim of Hartman.

The principal issue is whether the defendant was negligent. If not, neither Gibson nor Hartman was entitled to recover.

The accident happened about midnight at a crossing over a gravelled rural road. The weather was clear, although there was some testimony concerning patches of fog. The Gibson car was following another occupied by three of their friends and driven by one Johnson. The parties were just riding around.

Both cars were being driven, according to the testimony, at a speed of about 30 to 35 miles an hour. The Gibson car was from 50 to 125 feet behind Johnson. The Johnson car was kicking up a cloud of dust estimated to be from six to nine feet high. It had its bright lights on; Gibson had dimmed his lights.

The approach to the crossing is downgrade with a gradual curve to the left. In daylight the crossing is in full view from a distance of at least 500 feet.

Ninety feet from the crossing, on the right as the cars approached, is a lane leading off the main highway. When the Johnson car was at least 100 feet from the crossing (the distance must have been greater but it is not important), Johnson observed the freight train occupying the crossing. It was moving slowly to the right and Johnson could even see the numbers on the coal cars. Instead of stopping and flagging down the Gibson car which was following him, he applied his brakes and turned off into the lane on the right. Gibson continued on through a cloud of dust and testified he was within 30 feet of the crossing before he saw the train. He was unable to stop in time.

The crossing was marked by one cross buck sign situated on the opposite side of the tracks from which Gibson approached, and to the left. There was no such sign on his side of the crossing on the right. Several hundred feet from the tracks on his side of the crossing there was a highway sign marked RR, but there is some question about its being hidden by weeds. Gibson was not familiar with this crossing, although Johnson was.

The train crew testified a fusee had been lit on the side of the crossing from which the cars approached, but we must accept Gibson's and Hartman's evidence to the effect that there were no lights or other special warning signals there.

This cannot be classified as an extrahazardous crossing from a topographical standpoint. The issue is, therefore, whether the railroad company on the night in question, while blocking the entire highway with its train, fairly could be found negligent in failing to have, or post, additional warnings to travelers on the highway.

The evidence introduced on behalf of Gibson and Hartman establishes clearly that a special condition was a principal contributing factor to the cause of this accident. It was the existence of the dust cloud created by the Johnson car which so obscured Gibson's vision that he did not see the train until too late. Obviously the defendant was not responsible for this condition, nor could it reasonably be held to have anticipated it. However, we must determine if the defendant could justly be found negligent in failing to maintain additional signs or in failing to have special warnings at the crossing as the train went by.

There are a number of things defendant could have done. For general purposes an additional cross buck sign would have furnished a better warning of the existence of the crossing. The train crew could have had lanterns or flares there. It is urged on behalf of Gibson that the engineer (then about 500 feet away) should have flashed a light back over the cars. Any or all of these additional warnings could have been

given and possibly might have prevented this accident. The question is whether reasonable care under the circumstances may be said to have *required* any of them.

■ We first examine the need for an additional cross buck sign. KRS 277.160 requires signal boards to be placed at railroad crossings "so as to be easily seen by travelers". Apparently this statute has not been construed as to require more than one sign at a crossing. One sign in the immediate proximity of the tracks easily observable by a traveler approaching from either direction may be adequate. However, the purpose of such sign is to warn of the presence of the crossing so that the traveler may be on the lookout for the *approach* of trains. Burkhead v. Pennsylvania R. Co., 275 Ky. 841, 122 S.W.2d 970.

Gibson contends that if defendant had maintained a cross buck sign on the right side of the tracks as he approached he would have been able to see it over the dust and would have had sufficient warning. This is entirely speculative and is contrary to the physical facts established by him.

■ Obviously the presence of a train on a crossing, blocking the entire highway, is a bigger and better warning than a cross buck sign. In a long line of cases we have held that a train occupying a crossing is an effective and adequate warning to travelers on the highway at night, and that under such circumstances a railroad company cannot be held negligent because other warnings were not given. Louisville & N. R. Co. v. Mischel's Adm'x., 272 Ky. 295, 114 S.W. 2d 115; Scarbrough v. Louisville & N. R. Co., 276 Ky. 292, 124 S.W.2d 88; Louisville & N. R. Co. v. Reynolds, 305 Ky. 54, 202 S.W.2d 997; Louisville & N. R. Co. v. Branson, Ky., 267 S.W.2d 945; Bibbs v. Kentucky & Indiana Terminal R. R., Ky., 300 S.W.2d 229. The reason for this rule is that the railroad company has a right to assume the traveler, operating his vehicle in a reasonably prudent manner, with adequate lights, will apprehend the presence of the train in ample time to avoid a collision. Chesapeake & O. Ry. Co. v. Switzer, 275 Ky. 834, 122 S.W.2d 967; Illinois Central R. Co. v. Maxwell, 292 Ky. 660, 167 S.W.2d 841.

■ The adequacy of such a warning under normal conditions was proven by the facts of this case. Johnson, who was preceding Gibson at the same speed, observed the presence of the train on the crossing in time to practically stop his automobile and make a right angle turn into a narrow lane when he was 90 feet away from it. He was the ordinary driver the defendant could anticipate might be approaching the crossing. (The fact that he was familiar with the crossing played no part in his actual observance of the presence of the train.)

As we have before suggested, a significant causative factor in this accident was the lack of visibility experienced by Gibson as the result of an unusual condition created by the tandem operation of these two automobiles. The defendant not only had nothing to do with the creation of this condition, but it cannot be held to have anticipated its development or the blind driving of Gibson when he could no longer guide on the taillights of the Johnson car. The circumstances do not justify imposing on defendant a special duty to Gibson and/or Hartman.

■ It is apparent the sole cause of this accident was the failure of Gibson to exercise care in the operation of his automobile after his fellow traveler Johnson had given him ample warning (by flashing his stop light and leaving the highway) that some unexpected development had taken place. No fair inference of negligence on the part of the defendant can be drawn from its failure to foresee a situation of this sort and take prior or contemporaneous additional steps to guard against it (which in all probability would have been unavailing).

The court correctly directed a verdict against Gibson. Since we have concluded defendant was not negligent under the cir-

cumstances shown, Hartman's claim against it must likewise fall as a matter of law. The defendant was entitled to a directed verdict on Hartman's claim.

Gibson contends the trial court erred in certain rulings with respect to the admission and exclusion of evidence. We find no error of the trial court in this respect. Even if all of Gibson's contentions on this point were upheld, it would not change the result heretofore reached in this opinion. We have throughout accepted Gibson's version of the facts. Additional evidence of collateral matters adds nothing to his claim.

The judgment in the case of Gibson v. Louisville and Nashville Railroad Company is affirmed. The judgment in the case of Hartman v. Louisville and Nashville Railroad Company is reversed with directions to enter judgment for the defendant.