**Robert Darrell WARD, Appellant,**

v.

**LOUISVILLE & NASHVILLE RAILROAD COMPANY, Appellee.**

Court of Appeals of Kentucky.

March 7, 1969.

Charles J. Kamuf, Beard, Rummage & Kamuf, Owensboro, for appellant.

Clarence Bartlett, Woodward, Bartlett & McCarroll, Owensboro, Marvin D. Jones and Eugene W. Herde, Louisville, for appellee.

DAVIS, Commissioner.

The trial court gave a directed verdict for the appellee railroad in appellant's suit seeking damages for personal injury and property loss allegedly sustained when the appellant drove his automobile into a freight car as it was being switched over a crossing on the Pleasant Valley Road about 2 a. m.

The appellant recognizes that there is a long line of cases from this court standing for the general proposition that the presence of a train as it passes over a grade crossing is of itself sufficient warning to an approaching motorist. Some of the cases so holding are Louisville & N. R. Co. v. Mischel's Adm'x, 272 Ky. 295, 114 S.W. 2d 115; Illinois Central R. Co. v. Maxwell, 292 Ky. 660, 167 S.W.2d 841; Louisville & N. R. Co. v. Reynolds, 305 Ky. 54, 202 S.W.2d 997; Louisville & N. R. Co. v. Branson, Ky., 267 S.W.2d 945; Gibson v. Louisville & N. R. Co., Ky., 382 S.W.2d 568. Appellant contends that the doctrine announced in those cases is illogical and inconsistent with modern traffic usages and urges reconsideration and modification of it.

The record before us reflects that the highway approaching the crossing from the direction traveled by appellant is straight for more than 500 feet and there existed no abnormal obstruction to prevent a clear view of the crossing. Three sets of tracks traversed the highway, and the railroad facility is a part of an important switching operation near the industrial complex of Owensboro. For the appellant, it was shown that the elevation of the tracks was somewhat higher than the grade level of the approaching highway, and it is reasoned by the appellant that the beam of his headlights on his Chevrolet Corvette sports car shone so as to go under the freight cars and thus deprived him of adequate warning of the train's occupancy of the crossing. It was shown in evidence that appellant's car left skid marks measuring 72 feet in length before it struck the third freight car in

the train being switched over the crossing. Appellant estimated that he was driving about 35 miles per hour before he applied his brakes. The highway was of blacktop construction and dry at the time. Appellant proffered evidence, which was rejected by the trial judge, respecting efforts made by some of the officials of Daviess County to have the railroad companies (including appellee) provide greater safety features at some of the crossings in the community, including the crossing at which the present accident occurred. Appellant also asserted in his testimony that a certain peculiarity of the location of a light and a building alongside the highway and near the crossing produced a deceptive shadow which made it difficult to clearly see any unlighted freight car occupying the crossing.

A state trooper who measured the skid marks expressed the opinion that the minimum speed at which appellant could have been driving was 33 miles per hour, but he was unable to determine the maximum speed at which appellant was driving since he had no way of determining the force of the automobile's impact with the train. Of course, the officer was unable to relate how far the car would have traveled before coming to a stop if it had not struck the train, nor did he have any estimate as to the speed of the car at the time it struck the freight car.

We do not regard our rule, which holds that the presence of a train at a crossing is sufficient warning to an approaching motorist, as an absolute or unqualified rule. If it were, we would look with favor upon a re-examination of it in light of modern vehicular travel conditions. In Bolam v. Louisville & N. R. Co., (6 CA) 295 F.2d 809, at page 812, Chief Judge Schackelford Miller, in speaking 'for the court and interpreting Kentucky law, said:

"The presence of a train in an intersection is, in the absence of unusual circumstances, a sufficient warning to an approaching motorist. Louisville & N. R. Co. v. Branson, (Kentucky 1954) 267

S.W.2d 945; Illinois Central R. Co. v. Maxwell, 292 Ky. 660, 167 S.W.2d 841."

In the Maxwell case, cited in Bolam in applying the rule that the presence of the train was sufficient notice to the motorist, this court noted that peculiar conditions or practices could serve to modify the rule so as to impose a duty of greater warning upon the railroad company. In support of that position, the court cited Coil's Adm'x v. Chicago, St. Louis & N. O. R. Co., 232 Ky. 33, 22 S.W.2d 428, in which the track was concealed from view, and Louisville & N. R. Co. v. Mahoney, 220 Ky. 30, 294 S.W. 777, in which there were an obstructed view and an abrupt turn in the road, coupled with a showing that electric signals usually maintained by the railroad, and upon which the motorist relied, were not in operation at the time of the accident.

In 44 Am.Jur., Railroads, Section 502, Page 742, it is said in part:

"Ordinarily, a railroad company can hardly be charged with negligence where injury results from a collision with an automobile and the side of a moving train on the crossing. The train in such a case is rightfully occupying the crossing, and the fact that it is there is a sufficient warning to the traveler upon the highway. In the absence of a statute imposing an absolute obligation in this respect, a railroad company is not bound to have gates, lights, or other warnings at a crossing in order to prevent such an occurrence unless the circumstances are such that ordinary prudence and foresight would anticipate that it might happen in the ordinary course of events."

We regard the rule as stated to be a sound one. We are unable to find in the record before us any circumstance by which it may be said that, in the exercise of ordinary prudence and foresight, the operators of the railroad should anticipate that a motorist would collide with the side of the moving train in the ordinary course of events. In view of this conclusion, it follows that the trial court properly directed a verdict in favor of the railroad.

The judgment is affirmed.

All concur.