Suenette CARMAN, Executrix of the
Estate of Louis H. Carman,
Deceased, Appellant,

v.

DUNAWAY TIMBER COMPANY,
INC., Appellee.

No. 95–SC–531–DG.

Supreme Court of Kentucky.

Feb. 27, 1997.

Rehearing Denied Sept. 4, 1997.

Allan Weiss, Louisville, for appellant.

David F. Broderick, Steven O. Thornton, Kenneth P. O'Brien, Broderick, Thornton & Pierce, Bowling Green, for appellee.

COOPER, Justice.

Appellant's decedent, Louis H. Carman, was injured in an accident which occurred on the premises of Appellee, Dunaway Timber Company, Inc., on July 24, 1986. He brought this action claiming that his injuries were caused by Dunaway's negligence. Carman died prior to trial and the action was revived in the name of his wife, Suenette Carman, as executrix of his estate. Following a trial by jury, a verdict was returned in favor of Dunaway and judgment was entered dismissing the complaint. That judgment was affirmed by the Court of Appeals and we granted discretionary review. We now affirm both the trial court and the Court of Appeals.

Carman was a logger, who made a profit from purchasing standing timber from property owners, then cutting it and selling the logs to timber mills such as the one owned by Dunaway. On the date of the accident, he was delivering a load of logs to Dunaway's mill at Garfield, Kentucky, with the intention of selling the logs to Dunaway. Carman's son, Doug Carman, had loaded the logs onto Carman's truck with a piece of equipment referred to in the record as a "knuckle boom." The logs were secured by three chains fastened to the truck by chain binders. The chains and binders were applied to the load by Morris Woods and Pete Moore, employees of Doug Carman. Although Woods was then off duty, he rode with Louis Carman to Dunaway's place of business so that Carman could give him a ride home after the logs were delivered and sold.

It was Dunaway's policy to require all loggers to unchain their own loads before Dunaway would accept ownership of the logs. Once unchained, Dunaway would unload the logs with a front-end loader. Pursuant to this policy, Carman and Woods proceeded to remove the binders and unchain the logs. Woods loosened the binders on the passenger side of the truck and Carman removed the chains by pulling them across to the driver's side. When the middle chain was released, a log fell from the truck and struck Carman. The resulting injuries required amputation of Carman's right leg below the knee.

Carman premised his cause of action on Dunaway's failure to comply with certain administrative regulations promulgated pursuant to the Kentucky Occupational Safety and Health Act ("KOSHA"), specifically 803 KAR 2:317. This regulation is an incorporation by reference of a federal regulation promulgated pursuant to the federal Occupational Safety and Health Act ("OSHA"), 29 C.F.R. § 1910.265(d)(1)(i)(b), which provides,

> Binders on logs shall not be released prior to securing with unloading lines or other unloading device.

Appellant theorizes that Dunaway could have complied with this regulation by using a front-end loader to brace the load while the logs were being unchained. She argues that the regulation establishes Dunaway's standard of care and that the violation of this regulation constituted negligence per se. *Britton v. Wooten,* Ky., 817 S.W.2d 443, 447 (1991).

Over Appellant's objection, Dunaway introduced evidence that it was the standard practice of timber companies in the area not to assume ownership of a load of logs until after the seller had unchained the load without assistance from the buyer. Appellant introduced the KOSHA regulation as evidence to the contrary. The jury instructions defined the duty owed to Carman by Dunaway in accordance with common law principles, *i.e.,* to exercise that degree of care exercised by reasonable and prudent timber companies toward persons who sell and deliver logs to their places of business. Appellant asserts that since Dunaway's violation of the KOSHA

regulation constituted negligence per se, the jury should have been instructed to determine only the degree, if any, of Louis Carman's contributory fault and to render an apportioned verdict.

■ In the proper circumstances, violations of administrative regulations constitute negligence per se. Like statutes and ordinances, regulations, once adopted, "have the force and effect of law...." *Britton v. Wooten, supra,* at 447. However, in order for a violation to become negligence per se, the plaintiff must be a member of the class of persons intended to be protected by the regulation, and the injury suffered must be an event which the regulation was designed to prevent. If both questions are answered in the affirmative, negligence per se is established and the applicable regulation defines the relevant standard of care. *Lomayestewa v. Our Lady of Mercy Hospital,* Ky., 589 S.W.2d 885, 887 (1979); *cf. Hackney v. Fordson Coal Co.,* 230 Ky. 362, 19 S.W.2d 989 (1929). Here, although the accident was an event which the regulation was designed to prevent, Louis Carman was not a member of the class of persons intended to be protected.

■ KRS 338.011 clarifies that the purpose of the Kentucky Occupational Safety and Health Act is the prevention of "any detriment to the safety and health of all *employees,* both public and private, covered by this chapter...." (Emphasis added.) KRS 338.031(1)(a) requires each employer to "furnish to each of his *employees* employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his *employees.*" (Emphasis added.) KRS 338.015(2) defines an "employee" as "any person employed ...", and KRS 338.015(1) defines an "employer" as "any entity for whom a person is employed...." Louis Carman was not an employee, and certainly not Dunaway's employee; thus, he was not within the class of persons which the KOSHA regulations were designed to protect. *Cf. Hackney v. Fordson Coal Co., supra.*

Appellant's reliance on *Lomayestewa v. Our Lady of Mercy Hospital, supra,* is mis-

placed. The administrative regulation at issue in that case required hospital psychiatric wards to place detention screens or their equivalent on room windows to prevent patients from escaping or falling through the windows. The plaintiff in *Lomayestewa* was injured when she either jumped or fell through a window which was not protected by the required detention screen. Obviously, she was within the class of persons intended to be protected by that regulation.

Nor does *Teal v. E.I. DuPont de Nemours and Company*, 728 F.2d 799 (6th Cir.1984) have any application to this case. *Teal* would extend the coverage of the federal Occupational Health and Safety Act to employees of independent contractors who work at another employer's workplace. Louis Carman was neither an independent contractor nor an employee thereof. He was a private businessman who was on Dunaway's premises for the purpose of selling merchandise (logs) to Dunaway.

Since this is not a case in which the relevant standard of care is supplied by KOSHA regulations, the duty owed to Louis Carman by Dunaway must be defined by common law, *i.e.*, that degree of care exercised by reasonable and prudent timber companies toward persons who sell and deliver logs to their places of business. The trial judge correctly permitted Dunaway to introduce evidence of custom within the industry to prove this standard of care. *See Illinois Central R. Co. v. Maxwell*, 292 Ky. 660, 167 S.W.2d 841 (1943). Appellant was permitted to introduce the KOSHA regulation as evidence to the contrary. The jury instructions accurately framed the issue of whether Dunaway had complied with its common law duty.

Appellant also complains that the trial judge erred in refusing to grant her belated motions to amend her complaint to claim punitive damages. In view of the jury's verdict and the result reached on this appeal, any claimed error in that regard is moot.

For these reasons, the judgment of the Breckinridge Circuit Court and the opinion of the Court of Appeals are affirmed.

STEPHENS, C.J., and JOHNSTONE and WINTERSHEIMER, JJ., concur.

LAMBERT, J., dissents by separate opinion, with GRAVES and STUMBO, JJ., joining that dissent.

LAMBERT, Justice, dissenting.

Notwithstanding the admonition of KRS 446.080 that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature ...," the majority has technically construed the term "employees" in a manner which substantially defeats the purpose of KRS 338.011, *et seq.*

As shown by the majority opinion, appellee, Dunaway Timber Company, Inc., refused to comply with the regulations designed to promote safety in the unloading of logs. It adopted a policy which required loggers to unchain their own loads before Dunaway would unload the logs with a front-end loader. At trial, Dunaway produced evidence that it observed the typical practice of timber companies in the area to refuse to assist in the process of unloading until the logs had been unchained. The effect of the such refusal by Dunaway and others was to force loggers to release chains and binders without any bracing, a practice which is absolutely contrary to the regulation which provides that "[b]inders on logs shall not be released prior to securing with unloading lines or other unloading device." 29 C.F.R. § 1910.265(d)(1)(i)(b) as incorporated by 803 KAR 2:317.

The majority concedes that the regulation was designed to prevent accidents of the type which occurred here. It denies relief on grounds that appellant's decedent, Lewis Carman, was not a member of the class of persons intended to be protected.

No person would have had greater need of the protection afforded by the regulation than Lewis Carman. He was precisely in the class of persons for whose benefit the regulation existed, those who would be foreseeably injured by a violation of the regulation.

Careful examination of the statutory language upon which the majority depends reveals no compulsion to so narrowly construe

the statutes. KRS 338.011 is a broad statement of public policy and purpose with respect to occupational accidents and diseases "by preventing any detriment to the safety and health of all employees, both public and private, covered by this chapter, arising out of exposure to harmful conditions and practices at places of work...." This provision hardly demands a conclusion that an absolute employer-employee relationship be found to exist before the law applies. Indeed, the language suggests a liberal construction per KRS 446.080. The next provisions, KRS 338.015(1) and (2) define employer to "mean any entity for whom a person is employed" and define employee to "mean any person employed." As with the prior statute, these provisions do not compel a strict construction of the statutory language. Under these definitions, Dunaway was an employer and Carman was an employee, albeit not Dunaway's employee. KRS 338.031(1)(a) requires an employer to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." While this statute appears to be limited to employers and employees, it does not eliminate any duty which would devolve upon Dunaway to otherwise comply with the law.

In my view, *Lomayestewa v. Our Lady of Mercy Hospital,* Ky., 589 S.W.2d 885 (1979), and *Teal v. E.I. DuPont de Nemours and Company,* 728 F.2d 799 (6th Cir.1984), should be applied to this case. The reality of what transpired here and what transpires thousands of times each year across Kentucky is that a logger working alone or with only a helper brings a load of logs to a mill. The load is transported on a truck but the logger has no unloading equipment. Under the practice observed by Dunaway and apparently observed widely in the industry, the logger must himself loosen the chains and binders, taking all the risk associated therewith, before the mill will participate. It would be vastly more reasonable to comply with the regulation by bracing the load with a front-end loader before the chains are unfastened. Those who engage in the business of buying logs from independent loggers should be required to observe applicable safety regulations and not be absolved from that duty solely because no traditional employer-employee relationship exists.

GRAVES and STUMBO, JJ., join this dissenting opinion.